The CITY OF HOUSTON, Appellant,

v.

SOUTHWEST CONCRETE
CONSTRUCTION, INC.,
Appellee.

No. B14–91–01310–CV.

Court of Appeals of Texas,
Houston (14th District).

June 25, 1992.

Rehearing Denied Sept. 3, 1992.

Barbara Pierce, Bertrand L. Pourteau, Houston, for appellant.

Allen A. Cease, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and CANNON, JJ.

## OPINION

MURPHY, Justice.

Appellant, the City of Houston, appeals a judgment rendered against it in the amount of fifty-two-thousand seven-hundred-fifty-six dollars and ninety-three-cents ($52,-756.93) for tortious interference with contract, negligence, breach of contract, breach of covenant of good faith and fair dealing, retaliation and harassment. In one point of error, appellant asserts that the trial court erred in refusing to enter a judgment *non obstante verdicto* in its favor on the basis of governmental immunity. We affirm.

Appellee, Southwest Concrete Construction, Inc., entered into two construction contracts in 1987 for the rehabilitation of apartment complexes. Under the first contract entered into on August 8, 1987, appellee was to refurbish the Meadow Lea apartment complex for the sum of $429,913.01. Under the second contract, appellee would reconstruct the Colonial apartment project for $388,301.00. The loans which financed the reconstruction of these apartment complexes were created under the federal Rental Rehabilitation Program and administered by the municipalities, namely, appellant, the City of Houston. Under this act, private owners would receive financing in order to rehabilitate apartment houses in return for which the owner would promise to make the properties available to low and moderate income families.

Appellant entered into two Rental Rehabilitation Loan Agreements with two private investors who owned rental units in Houston. In turn, these investors contracted with appellee as the general contractor for these projects. Although appellant was not a party to these contracts, it did oversee the rehabilitation projects and make advances on the loans. An employee of the city, Mr. Lance Crawford, served as the manager of the Houston Rehabilitation Section of the Public Works Department. In this capacity, Mr. Crawford oversaw the administration of the construction projects. As these projects continued, the appellant began delaying advance payments to the appellee. Because of this shortfall, appellee's relationships with sub-contractors was harmed. Further, appellant wrongfully began paying subcontractors directly thereby harming appellee's business reputation and prejudicing its ability to secure performance bonds. Appellee sued appellant for tortious interference with contract, negligence, breach of contract, breach of covenant of good faith and fair dealing, retaliation and harassment arising out of its administrative function in the rehabilitation projects for which appellant pled damages in the amount of $53,473.70. The case was tried before a jury and a verdict was returned in favor of appellee for the amount of $52,756.93 plus pre- and post-judgment interest. Appellant moved for a judgment *non obstante verdicto* on the basis of governmental immunity. The trial court denied appellant's motion for J.N.O.V. and this appeal follows.

In one point of error, appellant asserts that the trial court erred in denying its motion for J.N.O.V. because the doctrine of governmental immunity applied and therefore judgment could not be entered under a common law negligence theory. This appears to be a case of first impression since the legislature amended the Texas Tort Claims Act in 1987 by giving strict statutory definitions of "government" and "pro-

prietary" functions.[1] In order to supersede a series of Texas Supreme Court decisions which categorized a municipality's functions as either proprietary or governmental, the Texas legislature drafted section 101.0215 to redefine certain functions as governmental rather than proprietary. *See generally*, J. Montford & W. Barber, *1987 Texas Tort Reform: The Quest for a Fairer and More Predictable Texas Civil Justice System*, 25 Houston L.Rev. 59, 121 (1988). In so doing, the legislature enumerated a non-exclusive list of those functions which were to be deemed governmental in nature. *Id.*

■ The functions of a municipal entity fall into one of two categories. Those functions which the municipality carries out as an arm of the state for the purpose of serving the general public are termed "governmental functions." *See* TEX.CIV. PRAC. & REM.CODE ANN. § 101.0215(a) (Vernon Supp.1992). In this capacity, a municipality is afforded the state's sovereign immunity except to the extent the state has waived its immunity under the Texas Tort Claims Act. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.001 *et seq.* (Vernon 1986 & Supp.1992). Subsection (a) provides that:

[a] municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public. . . .

---

1. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215 (Vernon Supp.1992). In subsections (a) and (b) of section 215, the legislature has provided a list of both "proprietary" and "governmental" functions. *Id.* Subsection (a) provides that:

(a) A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public, including but not limited to:
(1) police and fire protection and control;
(2) health and sanitation services;
(3) street construction and design;
(4) bridge construction and maintenance and street maintenance;
(5) cemetery and cemetery care;
(6) garbage and solid waste removal, collection, and disposal;
(7) establishment and maintenance of jails;
(8) hospitals;
(9) sanitary and storm sewers;
(10) airports;
(11) waterworks;
(12) repair garages;
(13) parks and zoos;
(14) museums;
(15) libraries and library maintenance;
(16) civic, convention centers, or coliseums;
(17) community, neighborhood, or senior service centers;
(18) operation of emergency ambulance service;
(19) dams and reservoirs;
(20) warning signals;
(21) regulation of traffic;
(22) transportation systems;
(23) recreational facilities, including but not limited to swimming pools, beaches, and marinas;
(24) vehicle and motor driven equipment maintenance;
(25) parking facilities;
(26) tax collection;
(27) firework displays;
(28) building codes and inspection;
(29) zoning, planning, and plat approval;
(30) engineering functions;
(31) maintenance of traffic signals, signs, and hazards;
(32) water and sewer service; and
(33) animal control.
TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215(a) (Vernon Supp.1992). In addition to a statutory recitation of governmental functions, the 1987 amendments to the Texas Tort Reform Act stated three general categories of "proprietary" functions. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215(b) (Vernon Supp.1992). Subsection (b) provides that:
*(b) This chapter does not apply to the liability of a municipality for damages arising from its proprietary functions*, which are those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality, *including but not limited to:*
(1) the operation and maintenance of a public utility;
(2) amusements owned and operated by the municipality; and
(3) any activity that is abnormally dangerous or ultrahazardous.
TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215(b) (Vernon Supp.1992) *(emphasis added)*. Furthermore, subsection (c) provides that:
*(c) The proprietary functions of a municipality do not include those governmental activities listed under Subsection (a).*
TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215(c) (Vernon Supp.1992) *(emphasis added)*.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.-0215(a) (Vernon Supp.1992).

█ In its second capacity, a municipality undertakes activities which are not integral to its function as an arm of the state; those functions are known as "proprietary functions." *See, e.g., City of Fort Worth v. George,* 108 S.W.2d 929, 931 (Tex.Civ. App.—Fort Worth 1937, writ ref'd). The sovereign immunity of the state does not protect a municipality from liability for actions taken in a proprietary capacity because such are undertaken for the benefit of private enterprise or the residents of the municipality rather than for the benefit of the general public. *Id.* In the 1987 Texas Tort Reform Act,[2] the legislature enumerated a non-exclusive list of proprietary functions just as it had done by defining government functions. *See generally,* J. Montford & W. Barber, *1987 Texas Tort Reform: The Quest for a Fairer and More Predictable Texas Civil Justice System,* 25 Houston L.Rev. 59, 121 (1988). Section 215(b) provides that:

> [t]his chapter does not apply to the liability of a municipality for damages arising from its proprietary functions, which are those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality....

TEX.CIV.PRAC. & REM.CODE ANN. § 101.-0215(b) (Vernon Supp.1992) However, the legislature included a *caveat* in addition to language which indicated that the list of proprietary functions was not exclusive. *Id.* Subsection (c) stated that "[t]he proprietary functions of a municipality do not include those governmental activities listed under Subsection (a)." TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215(c) (Vernon Supp. 1992). Thereby, the Texas legislature gave deference to the judiciary to interpret what constitutes a proprietary function so long as it was not enumerated as a governmental function under subsection (a).

While most suits against a government entity such as a municipality must be brought under the Texas Tort Claims Act, the Act does not apply to those *proprietary* functions which a municipality chooses to undertake. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 101.0215(b) (Vernon Supp. 1992). *See, e.g., City of Gladewater v. Pike,* 727 S.W.2d 514, 519 (Tex.1987); *City of Round Rock v. Smith,* 687 S.W.2d 300, 302 (Tex.1980); *Turvey v. City of Houston,* 602 S.W.2d 517, 518 (Tex.1980). Therefore, a city will still be liable when an employee of a municipality commits a tortious act during his or her work for the city's proprietary function. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 101.0215(b) (Vernon Supp. 1992). *See also City of Gladewater,* 727 S.W.2d at 519; *City of Round Rock,* 687 S.W.2d at 302; *Turvey,* 602 S.W.2d at 518. To implement this policy, the Texas Supreme Court has previously mandated that the doctrine of municipal immunity is to be strictly construed against the municipalities. *See, e.g., City of Gladewater,* 727 S.W.2d at 519.

█ Contrary to appellant's contention that section 101.021 does not allow for appellee's recovery of damages,[3] we find that

---

**2.** Prior to the 1987 amendments to the Texas Tort Reform Act, the Act merely stated that:
> This chapter does not apply to a proprietary function of a municipality.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.058 (Vernon 1986) *(repealed by* Acts 1987, 70th Leg., 1st C.S., ch. 2, § 3.13, eff. Sept. 2, 1987). The definition of what actions constituted proprietary or governmental functions was left to the judiciary. *See generally,* C. Jones, *Texas Municipal Liability: An Examination of the State and Federal Causes of Action,* 40 Baylor L.Rev. 595, 614–15 (1988). The Texas Supreme Court had previously made several interpretations of the nature of a proprietary versus governmental function. *See, e.g., City of Gladewater v. Pike,* 727 S.W.2d 514, 519 (Tex.1987); *City of Round Rock v. Smith,* 687 S.W.2d 300, 302 (Tex.1980); *Turvey*

**3.** TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986). Section 101.021 provides that:
> A government unit in the state is liable for: (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if: (a) the property damages, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and (B) the employee would be personally liable to the claimant according to Texas law; and (2) personal injury and death so caused by a condition or use of tangible personal or real

*v. City of Houston,* 602 S.W.2d 517, 518 (Tex. 1980).

the City of Houston's activities as an overall administrator of the rehabilitation loan program constitutes a proprietary function for which governmental immunity and the Texas Tort Claims Act do not apply. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215(b) (Vernon Supp.1992) ("[t]his chapter does not apply to the liability of a municipality for damages arising from its proprietary functions. . . ."). Administration of a federal Rehabilitation Loan Program by direct supervision of the projects is not a governmental function as enumerated in section 215(a). TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215(a) (Vernon Supp.1992).

Nevertheless, appellant argues that the city was acting in conformity with its police powers to promote the health, safety, welfare and morals of its citizens through its implementation of the federal Rehabilitation Loan Program. In support of its assertion that such a program is a government function, the city cites chapter 374 of the Local Government Code which grants municipalities the power to create urban renewal programs. TEX.LOCAL GOV'T CODE ANN. § 374.001 *et seq.* (Vernon 1988).

Section 374.002 states that it is public policy to counteract urban decay and that in the pursuit of this goal municipalities *may* implement both direct government and hybrid government and private enterprise projects.[4] *See* TEX.LOCAL GOV'T CODE ANN. § 374.002 (Vernon 1988). In support of such a policy, the federal, state and local governments have created a myriad of public programs including the federal Rehabilitation Loan Program at issue here; however, participation in this program is voluntary and the city of Houston assumed responsibilities by opting to participate in this particular program. While such a program may be focused at serving the public welfare, other public welfare projects by municipalities have been deemed proprietary rather governmental functions. *See, e.g., City of Gladewater,* 727 S.W.2d at 519 (operation of municipal cemetery is proprietary function); *City of Round Rock,* 687 S.W.2d at 302–03 (maintenance of storm sewer is proprietary function); *Turvey,* 602 S.W.2d at 518 (street maintenance is proprietary function). Therefore, we find that the mere fact that a program or project is

property if the governmental unit would were it a private person, be liable to the claimant according to Texas law.
TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986). Nevertheless, this section is applicable only in those instances in which the Texas Tort Claims Act applies; that is, when the government was acting in its *governmental* rather than *proprietary* functions. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 101.0215(b) (Vernon Supp.1992). In instances such as this case, where the municipality is acting in a proprietary function, the Texas Torts Claims Act does not even apply. *Id.*

4. TEX.LOCAL GOV'T CODE ANN. § 374.002 (Vernon 1988). Section 374.002 of the Local Government Code mandates legislative intent as follows:

(a) The legislature finds that slum and blighted areas exist in municipalities in this state and that those areas:
(1) are a serious and growing menace that is injurious and inimical to the public health, safety, morals, and welfare of the residents of this state;
(2) contribute substantially and increasingly to the spread of disease and crime, requiring excessive and disproportionate expenditures of public funds for the preservation of the public health and safety, and for crime prevention, correctional facilities, prosecution and punishment, treatment of juvenile delin-

quency, and the maintenance of adequate police, fire, and accident protection and other public services and facilities; and
(3) constitute an economic and social liability, substantially impair the sound economic growth of affected municipalities, and retard the provision of housing accommodations.
(b) For these reasons, prevention and elimination of slum and blighted areas are matters of state policy and concern that may be best addressed by the combined action through approved urban renewal plans. The legislature further finds that the repair and rehabilitation of buildings and other improvements in affected areas, public acquisition of real property, demolition of buildings and other improvements as necessary to eliminate slum or blight conditions or to prevent the spread of those conditions, the disposition of property acquired in affected areas and incidental to the purposes stated by this subsection, and other public assistance to eliminate those conditions are public purposes for which public money may be spent and the power of eminent domain exercised.
(c) It is the intent of the legislature that private enterprise be encouraged to participate in accomplishing the objectives of urban renewal to the extent of its capacity and with governmental assistance as provided in this chapter.
*Id.*

undertaken for the public health, safety, welfare or morals of the citizenry does not alone deem the action to be governmental rather than proprietary.

█ In this instance, the city was not acting as an inspector for purposes of ensuring compliance with the building code but rather chose to become actively involved in the implementation of the federal Rehabilitation Loan Program.[5] The caselaw is replete with the notion that ministerial acts by local governments which could easily be performed by private contractors are proprietary functions rather than government functions which require the exercise of discretion by government officials.[6] *See, e.g., City of Round Rock*, at 302. Therefore, the trial court did not err in rendering judgment based upon the jury's finding of tortious interference with appellee's contractual relations, negligence, breach of contract, breach of covenant of good faith and fair dealing, retaliation and harassment. Appellant's activities were a proprietary function and therefore not subject to the strictures of the Texas Tort Claims Act. TEX.CIV.PRAC. & REM.CODE ANN. § 101.001 *et seq.* (Vernon 1986).

The judgment of the trial court is affirmed.

---

5. Appellant further argues that language in the municipal code is dispositive. Appellant states that these ordinances reflect that the city of Houston was merely acting in accordance with mandates of the federal government. While courts may take judicial notice of municipal ordinances under the Rules of Evidence, we decline to do so. TEX.R.CIV.EVID. 204 (Pamph. 1992). To be a part of the record before an appellate court, municipal ordinances must be submitted in verified form. *See, e.g., Metro Fuels, Inc. v. City of Austin*, 827 S.W.2d 531, 532 & n. 3 (Tex.App.—Austin 1992, n.w.h.).

6. *See City of Round Rock*, 687 S.W.2d at 302. The test for determining whether the actions of a local government are proprietary or governmental is as follows:

It would seem that, in so far as municipal corporations of any class, and however incorporated, exercise powers conferred on them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the state,—they should be deemed agencies of the state, and not subject to be sued for any act or omission occurring while in the exercise of such power, unless, by statute, the action be given; that, in reference to such matters, they should stand as does sovereignty, whose agents they are, subject to be sued only when the state, by statute, declares they may be.... In so far, however, as they exercise powers not of this character, *voluntarily assumed*—powers intended for the private advantage and benefit of the locality and its inhabitants,—there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage to which an individual or private corporation exercising the same powers for a purpose essentially private would be liable.
*Id.* (quoting *City of Galveston v. Posnaisksy*, 62 Tex. 118, 127 (1884) (*emphasis added*).