**ETHIO EXPRESS SHUTTLE SERVICE, INC. d/b/a Texans Super Shuttle, Appellant,**

v.

**CITY OF HOUSTON, Appellee.**

No. 14–04–00937–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 12, 2005.

Rehearing Overruled June 9, 2005.

Richard N. Countiss, Houston, for appellants.

Bertrand L. Pourteau, II, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices FOWLER and FROST.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant, Ethio Express Shuttle Service, Inc., appeals the trial court's judgment dismissing its case for want of jurisdiction. On appeal, Ethio claims the trial court should not have granted the City's plea to the jurisdiction, arguing alternatively that either (1) the City was not engaged in a proprietary function and therefore did not enjoy sovereign immunity, or (2) the Texas Tort Claims Act waived immunity. We affirm because the City was engaged in a governmental function when it regulated transportation to and from airports and because the causes of action Ethio alleged do not fall within the Act's limited waiver of immunity.

### Factual and Procedural Background

Ethio is a private bus shuttle service that operates in Houston, Texas. When

Ethio initially asked the City for a ground transportation permit to provide shuttle service from two airports the City owned, the City denied the request, stating that its exclusive contract with Yellow Cab[1] prohibited it from allowing Ethio to provide a scheduled shuttle service for airport traffic. As a result, Ethio designed its proposed routes to operate in other areas. Later, however, the City informed Ethio that its Yellow Cab contract was not exclusive and that it should have granted Ethio the permit. By this point, Ethio already had expended a considerable amount of money redesigning its routes based on the City's earlier representation that Ethio would not be permitted to provide a private shuttle service from either of the City's airports.

■ Ethio then filed suit against the City, alleging negligent misrepresentation, fraud, conspiracy to commit fraud, business disparagement and slander, tortious interference with contract, conspiracy to tortiously interfere with contract, and conspiracy to engage in an unlawful restraint of trade.[2] The City specially excepted to Ethio's failure to plead a valid waiver of sovereign immunity. Ethio responded by filing its First Amended Petition in which it asserted the court had jurisdiction because the City was engaged in a proprietary function and, thus, enjoyed no sovereign immunity.[3] The City then filed a plea to the trial court's jurisdiction, this time

---

1. Yellow Cab is the assumed name of the Greater Houston Transportation Company.

2. Ethio filed suit against other defendants as well but they are not parties to this appeal. The trial court granted the City's motion to sever this portion of Ethio's suit.

3. Section 101.0215(b) of the Texas Tort Claims Act provides that a municipality may be liable for damages that arise from its pro-

prietary, as opposed to governmental, functions. TEX. CIV. PRAC. & REM.CODE § 101.0215(b). A City does not enjoy sovereign immunity when it is engaged in a proprietary function. Gates v. City of Dallas, 704 S.W.2d 737, 739 (Tex.1986) ("[P]roprietary functions have subjected municipal corporations to the same duties and liabilities as those incurred by private persons and corporations.").

asserting it was not engaged in a proprietary activity and had not waived sovereign immunity. In response, Ethio urged that the trial court had jurisdiction, arguing alternatively that either the City was engaged in a proprietary activity or the Texas Tort Claims Act had waived the City's sovereign immunity. The trial court granted the City's plea and dismissed Ethio's claims against the City for want of jurisdiction.

■ On appeal, Ethio argues that the City's regulation of the private shuttle service from its airports is a proprietary activity for which the City does not enjoy governmental immunity. In the alternative, Ethio urges this court to find the City's immunity has been waived by the Texas Tort Claims Act. We first address Ethio's claim that the City was engaged in a proprietary activity.[4]

### Standard of Review

■ The City's plea to the jurisdiction challenged the trial court's authority to determine the subject matter of Ethio's suit. *See Metropolitan Transit Auth. v. Burks*, 79 S.W.3d 254, 256 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000)). Deciding whether the trial court had subject matter jurisdiction is a question of law, reviewed de novo. *See id.* (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998)). The burden is on Ethio, as the plaintiff in a suit against a sovereign entity, to establish the trial court's jurisdiction. *See Reyes v. City of Houston*, 4 S.W.3d 459, 461 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). We

examine a plaintiff's good faith factual allegations to determine whether the trial court had jurisdiction. *See Metropolitan Transit Auth.*, 79 S.W.3d at 256 (citing *Bland*, 34 S.W.3d at 554). We must indulge every reasonable inference and resolve any doubts in Ethio's favor. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex.2004) (citing *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997)).

### Analysis

**1. The regulation of a private shuttle service from the City's airports is a governmental function for which the City enjoys sovereign immunity.**

***The importance of the governmental-proprietary distinction.***

■ Ethio alleges that the City is engaging in a proprietary function when it regulates traffic to its airports and therefore it is not immune from liability. Because the principles underlying Ethio's claim are true—that a city enjoys no immunity when it engages in a proprietary function—that issue is the first question we must answer. TEX. CIV. PRAC. & REM. CODE § 101.0215(b); *Gates*, 704 S.W.2d at 739; *Cranford v. City of Pasadena*, 917 S.W.2d 484, 487 (Tex.App.-Houston [14th Dist.] 1996, no writ) ("[I]f the municipality engaged in a proprietary act, a plaintiff could sue under common law as before.") (citing *Turvey v. City of Houston*, 602 S.W.2d 517, 519 (Tex.1980)). Only if we decide that the City's regulation was a governmental function would we decide whether Ethio pleaded a valid waiver of sovereign immunity. *City of Houston v.*

---

4. Determining a municipality's amenability to suit is a two-step inquiry. First we determine whether the function is governmental or proprietary. *Dalon v. City of DeSoto*, 852 S.W.2d 530, 536 (Tex.App.-Dallas 1992, writ denied) (citing *McKinney v. City of Gainesville*, 814

S.W.2d 862, 865 (Tex.App.-Fort Worth 1991, no writ)). If governmental, the second step is to determine whether liability is waived under the Texas Tort Claims Act. *See id.* (citing TEX. CIV. PRAC. & REM.CODE § 101.021; *McKinney*, 814 S.W.2d at 865).

*Southwest Concrete Constr., Inc.*, 835 S.W.2d 728, 730 (Tex.App.-Houston [14th Dist.] 1992, writ denied) ("In this [governmental functions] capacity, a municipality is afforded the state's sovereign immunity except to the extent the state has waived its immunity under the Texas Tort Claims Act.") (citing TEX. CIV. PRAC. & REM.CODE § 101.001 *et seq.*). For the following reasons, we hold the Texas Tort Claims Act classifies this activity as a governmental function.[5]

### Determining if a function is governmental or proprietary.

Before the 1987 amendments to the Texas Tort Claims Act, the Act did not define which activities were proprietary and which were governmental. During this time, Texas courts, guided by the language of the Act, decided whether a particular activity was proprietary or governmental. *Southwest Concrete*, 835 S.W.2d at 731 n. 2 ("Prior to the 1987 amendments ... [t]he definition of what actions constituted pro-

prietary or governmental functions was left to the judiciary."). As part of tort reform, however, the Legislature exerted more control over the designation of an activity as proprietary or governmental by amending the Texas Tort Claims Act and adding definitions of governmental and proprietary functions. *See id.;* TEX. CIV. PRAC. & REM.CODE § 101.0215(a), (b). Under these amendments, a governmental function is one that is "enjoined on a municipality by law and given to it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public," *id.* at § 101.0215(a); a proprietary function is one that "a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality...." *Id.* at § 101.0215(b).

■ As part of the amendments, the Legislature, in section 101.0215(a), included a nonexclusive list of activities categorized as governmental functions. *Id.* at § 101.0215(a)(1)-(36).[6] If a function is in-

---

5. The parties correctly note the lack of case law directly on point.

6. Section 101.0215(a) provides that the following functions are governmental:

1. police and fire protection and control;
2. health and sanitation services;
3. street construction and design;
4. bridge construction and maintenance and street maintenance;
5. cemeteries and cemetery care;
6. garbage and solid waste removal, collection, and disposal;
7. establishment and maintenance of jails;
8. hospitals;
9. sanitary and storm sewers;
10. airports;
11. waterworks;
12. repair garages;
13. parks and zoos;
14. museums;
15. libraries and library maintenance;
16. civic, convention centers, or coliseums;
17. community, neighborhood, or senior citizen centers;
18. operation of emergency ambulance service;
19. dams and reservoirs;
20. warning signals;
21. regulation of traffic;
22. transportation systems;
23. recreational facilities, including but not limited to swimming pools, beaches, and marinas;
24. vehicle and motor driven equipment maintenance;
25. parking facilities;
26. tax collection;
27. fireworks displays;
28. building codes and inspection;
29. zoning, planning, and plat approval;
30. engineering functions;
31. maintenance of traffic signals, signs, and hazards;
32. water and sewer service;
33. animal control;
34. community development or urban renewal activities ...;

cluded in this nonexclusive list of governmental functions, it has been deemed governmental in nature by the Legislature and we have no discretion or authority to hold otherwise. *See* TEX. CIV. PRAC. & REM. CODE § 101.0215(c) ("The proprietary functions of a municipality do not include those governmental activities listed under Subsection (a)."); *Texas River Barges v. City of San Antonio,* 21 S.W.3d 347, 357 (Tex. App.-San Antonio 2000, pet. denied) ("Because the City's actions were encompassed within the governmental functions listed in the Act, we have no discretion to declare the actions proprietary . . . .") (citing *Herschbach v. City of Corpus Christi,* 883 S.W.2d 720, 730 (Tex.App.-Corpus Christi 1994, writ denied); *Mitchell v. City of Dallas,* 855 S.W.2d 741, 744 (Tex.App.-Dallas 1993), *aff'd,* 870 S.W.2d 21 (Tex. 1994)).

### The regulation of private shuttle services from the City's airports.

The list in section 101.0215(a) is rather specific in its description of functions; for example, some of the categories are 'maintenance of traffic signals, signs and hazards,' 'parking facilities,' and 'fireworks displays.' TEX.CIV.PRAC. & REM.CODE § 101.0215(a)(31), (25), (27). Continuing in this vein of specificity, three of the activities included in the list directly relate to the activities involved in this case: airports, regulation of traffic, and transportation systems. *Id.* at § 101.0215(a)(10), (21), (22). These three categories cover precisely the three aspects of this case because Ethio is a transportation system transporting travelers to the City's airports and the City regulates its business. We would be remiss to hold that the City's

activities are proprietary in a case in which they are so well aligned with the functions the Legislature has designated as governmental.

Although no case is directly on point, certainly we find much guidance from *Texas River Barges, Inc. v. City of San Antonio,* 21 S.W.3d at 347. There, the City of San Antonio entered into an exclusive contract with Yanaguana Cruises, Inc. to operate barges on the San Antonio river. *Id.* at 350. Texas River Barges, another barge-operating company, filed suit against the city when the city removed its barge for operating on the river without the city's consent. *Id.* at 351. The San Antonio Court of Appeals held that the regulation of barges on the city's waterways was a governmental function because, as in this case, it touched on several categories specifically listed in section 101.0215(a), namely, parks, dams, traffic regulation, transportation systems, and recreational facilities. *Id.* at 356–57 (citing TEX. CIV. PRAC. & REM.CODE § 101.0215(a)(13) (parks), (19) (dams), (21) (traffic regulation), (22) (transportation systems), (23) (recreational facilities)). The only true distinction between this case and *Texas River Barges* is that the City of San Antonio regulated barges on a river, TEX. CIV. PRAC. & REM.CODE § 101.0215(a)(19) (dams and reservoirs), rather than shuttle services at airports. *Id.* at § 101.0215(a)(10) (airports). This is a distinction without a difference and we conclude, as did the San Antonio Court of Appeals, that the City's regulation is a governmental function listed in section 101.0215(a).

### The general requirements of the Texas Tort Claims Act.

▬ Having determined that regulating Ethio's shuttle service is a governmental

---

35. latchkey programs conducted exclusively on a school campus . . .;
36. enforcement of land use restrictions . . . .

TEX. CIV. PRAC & REM.CODE § 101.0215(a).

function, we must now consider whether Ethio pleaded a valid waiver of the City's sovereign immunity under the Texas Tort Claims Act because merely engaging in a governmental function does not automatically waive the City's sovereign immunity. TEX. CIV. PRAC. & REM.CODE § 101.0215(a) (providing that a municipality engaged in a governmental function is liable *under this chapter*); *McKinney*, 814 S.W.2d at 865 ("Whereas if the action engaged in by a municipality is considered to be a governmental function, the [Texas Tort Claims Act] does apply, and *further analysis under the Act is required* to determine a municipality's potential liability.") (emphasis added). Absent a valid waiver under the Texas Tort Claims Act, the City enjoys sovereign immunity, *accord Texas River Barges*, 21 S.W.3d at 356, and for the trial court to have jurisdiction over the City, Ethio must have pleaded a valid waiver of sovereign immunity under the Texas Tort Claims Act. *Southwest Concrete*, 835 S.W.2d at 730 (stating municipalities enjoy sovereign immunity except to the extent the state waived immunity under the Texas Tort Claims Act); *see Mogayzel v. Tex. Dep't of Transp.*, 66 S.W.3d 459, 463 (Tex. App.-Fort Worth 2001, pet. denied) (stating pleader must allege facts that affirmatively demonstrate the trial court's jurisdiction to hear the case) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993)).

**2. The City's immunity is not waived under the Texas Tort Claims Act.**

Sovereign immunity is waived under the Texas Tort Claims Act for only two types of claims: (1) those involving property damage, personal injury or death arising from the operation or use of a motor-driven vehicle or motor-driven equipment; and (2) those involving personal injury or death caused by a condition or use of tangible personal property or real property.[7] TEX. CIV. PRAC. & REM.CODE § 101.021(1)(A), (2). Ethio has not alleged personal injury or death, so the second category does not apply. But Ethio argues it has alleged a claim that involves property damage proximately caused by the negligent operation or use of a motor-driven vehicle or motor-driven equipment. *Id.* at § 101.021(1). As we discuss below, we conclude that this argument is a stretch and we reject it.

***Ethio's negligent misrepresentation and fraud claims.***

■ We first will address Ethio's negligent misrepresentation and fraud claims. Ethio argues these claims would fall within this category if, for example, the false statements by City employees were made while the employees were in a vehicle. For several reasons, this is a creative, but not valid, argument. First, Ethio's petition does not allege that the City's tortious conduct occurred via a speaker using or operating a motor vehicle or motor-driven equipment. *See Montes v. City of Houston*, 2000 WL 1228618 at *2 (Tex.App.-Houston) [14th Dist.] Aug. 31, 2000) (not designated for publication) (stating court must determine trial court's jurisdiction by looking to allegations in plaintiff's petition) (citing *Liberty Mut. Ins. Co.*, 874 S.W.2d at 739 (Tex.App.-Austin 1994, writ denied)). Second, even if, as Ethio suggests on appeal, a City employee made misrepresentations or fraudulent statements from a vehicle, the required nexus between the use of the motor vehicle and Ethio's injury

---

7. Both types require an otherwise cognizable claim. TEX. CIV. PRAC. & REM.CODE § 101.021(1)(B) ("A governmental unit in the state is liable ... if ... the employee would be personally liable to the claimant according to Texas law."); § 101.021(2) ("A governmental unit in the state is liable ... if ... the governmental unit would, were it a private person, be liable to the claimant according to Texas law.").

still would be absent. *Brown v. Houston Indep. Sch. Dist.*, 123 S.W.3d 618, 620 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) ("[A] nexus must exist 'between the operation or use of the motor-driven vehicle or equipment and a plaintiff's injuries.'") (citing *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003)).

Such a state of the record would prove only that the injury-causing activity took place while a City employee was in a vehicle. Our Texas Supreme Court has made clear that this alone is insufficient to establish a waiver of sovereign immunity. *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 52 (Tex.1992) ("When an injury occurs ... and the [vehicle] is only the setting for the injury, immunity for liability is not waived."). Although a motor vehicle conceivably could have been the setting for the City's statements, Ethio's damages still would not have arisen from the vehicle's operation or use; instead, the damage would have arisen from the statements themselves and from Ethio's reliance upon them. *See Brown*, 123 S.W.3d at 620–21 ("This nexus requires more than mere involvement of property.... The [vehicle]'s use must have actually caused the injury.") (citing *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex.2001)). In short, for its negligent representation and fraud claims, Ethio failed to plead a valid waiver of sovereign immunity under the Texas Tort Claims Act.

### Ethio's intentional tort claims.

■ The same is true of Ethio's claims for conspiracy to commit fraud, business disparagement and slander, tortious interference with contract, conspiracy to tortiously interfere with contract, and conspiracy to engage in an unlawful restraint of trade. Again, we must determine whether the Legislature waived the City's sovereign immunity under the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM.CODE § 101.0215(a); *McKinney*, 814 S.W.2d at 865. Like Ethio's other claims, these claims do not involve the use or operation of a motor-driven vehicle or motor-driven equipment and fail for that reason. *See id.* at § 101.021(1)(A). In addition, all of these claims are intentional torts.[8] The Texas Tort Claims Act does not waive sovereign immunity for intentional torts. *Id.* at § 101.057(2) ("This chapter does not apply to a claim ... arising out of assault, battery, false imprisonment, *or any other intentional tort* ....") (emphasis added); *Texas River Barges*, 21 S.W.3d at 356 ("Under the Act, a municipality is immune from liability for intentional torts."). Consequently, Ethio's intentional tort claims also fail.

### Conclusion

In conclusion, the City's regulation of private shuttle services from the airports it owns is a governmental function, for which the City enjoys sovereign immunity. In addition, Ethio's pleadings do not establish the necessary waiver of the City's sovereign immunity under the Texas Tort Claims Act. As a result, we conclude the trial court correctly granted the City's plea to the jurisdiction and we affirm.

---

**8.** *See Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex.1996) (requiring specific intent for conspiracy); *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987) (requiring malice as intent for business disparagement and slander); *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex.1995) (requiring intentional act of interference for tortious interference with contract).