Affirmed in Part and Reversed in Part and Opinion filed July 24, 2008








Affirmed in Part and Reversed in Part and Opinion filed July 24, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00752-CV

_______________

 

THE CITY OF HOUSTON, Appellant

 

V.

 

PETROLEUM TRADERS CORPORATION, Appellee

                                                                                                                                               


On Appeal from the 151st District Court

Harris County, Texas

Trial Court Cause No. 2006-78766

                                                                                                                                               


 

O P I N I O N

The City of Houston appeals from
orders denying its plea to the jurisdiction on the claims of Petroleum Traders
Corporation (APTC@) for (1) breach of contract; (2) lost profits; (3) quantum meruit;
(4) attorney=s fees; and (5) conversion.  We conclude that the contract between the
City and PTC was properly executed, and the City=s immunity from suit on PTC=s contract claim has been waived by
statute.  We further conclude that the City is immune from suit on PTC=s remaining claims.  Accordingly, we
affirm in part and reverse in part.

 








Background

In 2005, the City of Houston
solicited bids from fuel suppliers through its Strategic Purchasing Division. 
This division provided certain documents to the bidding suppliers, including a
Letter of Clarification; Section A-Official Bid Form; Section B-Technical
Specifications; Section C-General Terms and Conditions; and various
attachments.  The City assigned these documents the identifying number
SC-R-9310-098-20598.  

The Letter of Clarification refers to
Sections A through C as both a contract and a bid document, with subsequent
letters of clarification incorporated into all bids.  Section A-Official Bid
Form states: AThis offer shall be irrevocable for 120 days after bid opening or for 90
days after City Council awards the bid, whichever comes last . . . .@  This section also states that
acceptance may be by issuance of a Notice of Award Letter and/or a Purchase
Order.  

PTC was among those who bid in March
2005 for the right to provide fuel to the City.  PTC filled out the bid
documents and submitted them to the City for consideration.  PTC=s bid was deemed the lowest
responsible bid.

City Purchasing Agent Calvin D. Wells
thereafter prepared a Request for Council Action to be heard on June 29, 2005. 
The Request for Council Action was approved at the June 29, 2005 City Council
meeting.  A Notice of Award Letter was sent on July 6, 2005 stating: 

I am pleased to inform you that the referenced
contract was approved for award to your firm by Council Motion 2005-0636 for a
thirty-six (36) month period for the items referenced.  A copy of the Council
Motion, if needed, may be obtained by calling (713) 247-1745.  This letter is
official notification to proceed and authorizes your firm to accept purchase
orders effectively from July 5, 2005.  

 

At the top of the letter, just
beneath the City of Houston letterhead, date, and address of PTC, the letter
contained this information:

 








NOTIFICATION OF AWARD

RE:      Fuel, Low Sulfur Diesel and Reformulated Gasoline for the
Finance and Administration Department.

SC-R-9130-098-20598/Line Item nos. 1-5, 6a, 9b and 7a

Estimated
Award Amount: $64,347,000.00/Passed June 29, 2005.

The City began to place fuel orders
with PTC on July 12, 2005, and PTC began to fill those orders.  The City
accepted and used approximately 42,000 gallons of fuel.  The City paid invoices
for that fuel until May 12, 2006, when the City stopped ordering fuel from PTC
and began to use a different source. 

PTC filed suit on December 12, 2006,
alleging claims for breach of contract and quantum meruit.  The City
filed a plea to the jurisdiction on March 21, 2007, asserting that it is immune
from suit.  On July 13, 2007, PTC added claims for taking and conversion.  The
City supplemented its plea to the jurisdiction on July 24, 2007 B in part to argue it had not waived
immunity by engaging in a proprietary function B and filed a second plea to the
jurisdiction on August 21, 2007 to address the new taking and conversion
claims.  On August 23, 2007, the trial court signed an order denying the City=s first plea to the jurisdiction.  On
September 10, 2007 the trial court signed an order granting the City=s plea to the jurisdiction on the
taking claim and denying it on the conversion claim.  

The City filed this appeal, and now
challenges the denials of its plea to the jurisdiction.  This court has
appellate jurisdiction to consider an interlocutory order denying a
governmental unit=s plea to the jurisdiction.  Tex. Civ. Prac. & Rem. Code '51.014(a)(8) (Vernon Supp. 2007).

Standard of Review 








A plea to the jurisdiction based on
governmental immunity challenges a trial court=s subject matter jurisdiction.  State
v. Holland, 221 S.W.3d 639, 642 (Tex. 2007); Bland Indep. Sch. Dist v.
Blue, 34 S.W.3d 547, 554 (Tex. 2000); Dahl ex rel. Dahl v. State, 92
S.W.3d 856, 860-861 (Tex. App.CHouston [14th Dist.] 2002, no pet.).  Subject matter
jurisdiction is essential to a court=s authority to act.  See Cont=l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 448 n.2 (Tex.
1996).  The plaintiff bears the burden to plead facts affirmatively
demonstrating subject matter jurisdiction.  Holland, 221 S.W.3d at 642. 
Upon a finding that the trial court lacks subject matter jurisdiction, the
court must dismiss the suit.  Jansen v. Fitzpatrick, 14 S.W.3d 426, 431
(Tex. App.CHouston [14th Dist.] 2000, no pet.).  A plea to the jurisdiction raises a
question of law reviewed de novo on appeal.  C.L. Westbrook,
Jr. v. Penley, 231 S.W.3d 389, 394 (Tex. 2007); Holland, 221 S.W.3d
at 642.  

A plea to the jurisdiction can
challenge either the pleadings or the existence of jurisdictional facts.  Tex.
Dept. of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226-27 (Tex.
2004).  

When a plea to the jurisdiction
challenges plaintiff=s pleadings, the determination pivots on whether the pleader
has alleged sufficient facts to demonstrate the court=s subject matter jurisdiction over
the matter.  Id.  We construe pleadings liberally in the plaintiff=s favor and look to the pleader=s intent.  City of Carrollton v.
Singer, 232 S.W.3d 790, 795 (Tex. App.CFort Worth 2007, pet. denied).  When
the pleadings neither allege sufficient facts nor demonstrate incurable defects
in jurisdiction, the issue is one of pleading sufficiency and the plaintiff
should be afforded the opportunity to amend.  County of Cameron v. Brown,
80 S.W.3d 549, 555 (Tex. 2002).  If the pleadings affirmatively negate
jurisdiction, then the plea to the jurisdiction may be granted without leave to
amend. Id.

When a plea to the jurisdiction
challenges jurisdictional facts, we consider the evidence submitted by the
parties to address the jurisdictional issues raised.  Miranda, 133
S.W.3d at 227.  AIf evidence creates a fact question regarding the
jurisdictional issue, then the trial court cannot grant the plea to the
jurisdiction, and the fact issue will be resolved by the fact finder.@  Id. at 227-28. 








Because governmental immunity
involves both immunity from suit and immunity from liability, it is necessary
to determine which form of immunity is being asserted.  The City does not claim
immunity from liability for payment due for fuel delivered under the PTC
purchase orders.  The City does claim immunity from suit, contending that no
valid contract exists and no valid waiver of authority has been invoked. 
See Clear Lake City Water Auth. v. Friendswood Dev. Co., No.
14-07-00096-CV, 2008 WL 2130435, at *2 (Tex. App.CHouston [14th Dist.] May 22, 2008, no
pet. h) (AWhen a governmental entity enters into a contract, that entity waives
immunity from liability and voluntarily binds itself, just as any other party
would, to the terms of the contract, but that entity does not thereby waive
immunity from suit@).  

Analysis

The City contends the trial court
erred in denying its plea to the jurisdiction on PTC=s claims for (1) breach of contract;
(2) lost profits; (3) quantum meruit; (4) attorney=s fees; and (5) conversion.  We
address each claim in turn.

Breach of Contract

The City contends that the trial
court erred in failing to grant its plea to the jurisdiction on PTC=s breach of contract claim.  PTC
offers two arguments in support of its contention that the City is not immune
from suit on a contract claim.  

PTC first argues that the City=s actions in contracting to procure
fuel constitute a proprietary function to which no immunity from suit attaches.








In the tort context, A[d]etermining a municipality=s amenability to suit is a two-step
inquiry.@  Ethio Express Shuttle Serv.,
Inc. v. City of Houston, 164 S.W.3d 751, 754 n.4 (Tex. App.CHouston [14th Dist.] 2005, no pet.). 
AFirst we determine whether the
function is governmental or proprietary.@  Id.  If the function is
governmental, the second step of the analysis addresses whether immunity has
been waived by statute.  Id. at 756-57.  A[C]ases involving claims against a
city begin with the threshold question of whether the city was acting in a
proprietary or governmental function.@  Truong v. City of Houston, 99
S.W.3d 204, 209 (Tex. App.CHouston [1st Dist.] 2002, no pet.); Bailey v. City of
Austin, 972 S.W.2d 180, 192 (Tex. App.CAustin 1998, pet. denied).  PTC=s first argument invites us to apply
the governmental/proprietary dichotomy to a contract claim.

In addressing whether the
governmental/proprietary dichotomy for tort claims also applies to contract
claims, we seek guidance from Tooke v. City of Mexia, 197 S.W.3d 325
(Tex. 2006).  In Tooke, the Texas Supreme Court addressed a suit to
recover on an alleged breach of contract by the City.  Id. at 343.  The
Tookes contended that their contract dispute with the City involved a
proprietary function because the City cancelled their service contract early
for budgetary reasons.  Id.  The supreme court stated, A[W]e have never held that [the
governmental/proprietary] distinction determines whether immunity from suit is
waived for breach of contract claims, and we need not determine that issue
here.@  Id.  The court did not
decide this issue because it concluded that the function at issue was
governmental in any case B and did so based upon the criteria in section 101.0215 of
the Texas Civil Practice & Remedies Code governing tort actions.  Id. 
The Court found no reason to believe that the classification criteria for
governmental versus proprietary functions would be different in tort and
contract actions.  Id. at 343-44. 

As in Tooke, we need not
decide whether the governmental/proprietary dichotomy applies in contract
actions.  Even assuming for argument=s sake that the dichotomy does apply
to PTC=s contract claim, the fuel purchases
at issue here are a governmental function. Therefore, PTC cannot contend that
the fuel purchases are a proprietary function to which no immunity from suit
applies.








In analyzing the correct
classification, we begin with the Texas Constitution.  It authorizes the
Legislature to Adefine for all purposes those functions of a municipality
that are to be considered governmental and those that are proprietary,
including reclassifying a function=s classification assigned under prior
statute or common law.@  Tex. Const. art. XI, '13; Tooke, 197 S.W.3d at 343. 
Section 101.0215 of the Texas Civil Practice & Remedies Code was written to
provide guidance in determining which functions are governmental and which are
proprietary.  A governmental function is Aenjoined on a municipality by law and
given to it by the state as part of the state=s sovereignty, to be exercised by the
municipality in the interest of the general public.@  Tex. Civ. Prac. & Rem. Code ' 101.0215(a) (Vernon 2006).  On the
other hand, a proprietary function is one that Aa municipality may, in its
discretion, perform in the interest of the inhabitants of the municipality . .
. .@  Tex. Civ. Prac. & Rem. Code ' 101.0215(b) (Vernon 2005). 

Among those functions the Legislature
has denominated as Agovernmental@ are police and fire protection, garbage collection,
operation of emergency ambulance service, and vehicle and motor driven
equipment maintenance.  See Tex. Civ. Prac. & Rem. Code ' 101.0215(a)(1), (6), (18), (24)
(Vernon 2005).  The City claims that the fuel purchases also are governmental
because they are essential to these statutory governmental functions.  PTC
contends the City was engaging in a proprietary function when it purchased fuel
and therefore enjoys no immunity from suit in tort.  See Tooke, 197
S.W.3d at 343 (AA municipality is not immune from suit for torts committed in
the performance of proprietary functions as it is for torts committed in the
performance of governmental functions@).

Courts repeatedly have recognized
that governmental functions encompass activities that are closely related to or
necessary for performance of the governmental activities designated by statute.

For example, in Ethio Express
Shuttle Service, a private bus shuttle service sued the City for negligent
misrepresentation, fraud, and tortious interference with contract.  164 S.W.3d
at 753.  The shuttle service contended that the City had waived immunity from
suit by engaging in a proprietary function.  Id.  This court determined
that the City=s regulation of bus service to the airport was a governmental function,
noting: AWe would be remiss to hold that the
City=s activities are proprietary in a
case in which they are so well aligned with the functions the Legislature has
designated as governmental.@  Id. at 756; see also City of San Antonio v.
Butler, 131 S.W.3d 170, 178 (Tex. App.CSan Antonio 2004, pet. denied) (Acourts have similarly held that all
actions related to a designated government function are reclassified as
governmental by the statute@).








Because the operation of a shuttle
service to the airport is closely related to functions on the non-exclusive
list of actions deemed by the Legislature to be governmental B including airports, regulation of
traffic and transportation systems B we concluded in Ethio that
the city was immune from suit on the plaintiff=s claims.  Ethio Express Shuttle
Serv., Inc., 164 S.W. 3d at 753; see also City of San Antonio, 131
S.W.3d at 177-78 (city was immune from tort suit arising from alcohol sales at
concert because provision of alcohol was done under the umbrella of operating Acivic, convention centers, or
coliseums@ designated as a governmental function under section 101.0215(a)(16)); Tex.
River Barges v. City of San Antonio, 21 S.W.3d 347, 356-57 (Tex. App.CSan Antonio 2000, pet. denied) (because
the operation of a marina, among other properties, is a governmental function
under section 101.0215(a)(23), immunity from suit applied to claims for
conversion and interference with a prospective business relationship arising
from removal of barge from marina); Mitchell v. City of Dallas, 855
S.W.2d 741, 744 (Tex. App.CDallas 1993), aff=d, 870 S.W.2d 21 (Tex. 1994) (because the maintenance
of public parks is a governmental function under section 101.0215(a)(13),
immunity prevented plaintiff from suing under the common law for minor son=s injury in a bicycle accident in the
park).

Similar reasoning applies here. 
Without fuel, the City would be unable to perform governmental tasks required
for the public good.  Therefore, the City=s governmental functions encompass
the procurement of fuel necessary to perform those specific tasks B including police and fire
protection, garbage collection, operation of emergency ambulance service, and
vehicle and motor driven equipment maintenance B denominated by the Legislature as Agovernmental.@  See Tex. Civ. Prac. &
Rem. Code ' 101.0215(c) (1), (6), (18), (24) (Vernon 2005); City of San Antonio,
131 S.W.3d at 177 (Aall activities associated with the operation of one of the
government functions listed in section 101.0215(a) are governmental and cannot
be considered proprietary, regardless of the city=s motive for engaging in the activity
. . . actions related to a designated government function are reclassified as
governmental by the statute@).








Second, PTC argues that even if the
fuel purchases at issue involve a governmental function, immunity from suit
specifically has been waived in section 271.152 of the Local Government Code. 
PTC specifically pleaded section 271.152 in its petition.  Section 271.152
states: 

 A local governmental entity that is authorized by
statute or the constitution to enter into a contract and that enters into a
contract subject to this subchapter waives sovereign immunity to suit for the
purpose of adjudicating a claim for breach of the contract, subject to the
terms and conditions of this subchapter.

 

Tex. Loc. Gov=t Code Ann. ' 271.152 (Vernon 2005).[1] 
Section 271.151(2) defines a Acontract subject to this subchapter@ as:

[A] written contract stating the essential terms of
the agreement for providing goods or services to the local governmental entity
that is properly executed on behalf of the local governmental entity.

 

Tex. Loc. Gov=t Code Ann. ' 271.151(2) (Vernon 2005).  

It is undisputed that the contract at
issue here stated all essential terms and involved the provision of goods or
services.  The City contends that the trial court nonetheless erred in denying
its plea to the jurisdiction because a contract is subject to section 271.152
only if it has been Aproperly executed.@  Id.  The City says no Aproperly executed@ contract exists between the City and
PTC because the documents upon which PTC relies were not signed by the mayor
and countersigned by the City=s controller.  The City further contends that APTC has not plead that any statute or
provision of the Constitution authorized Houston to enter into the
Solicitation.@[2]








            The pertinent facts
surrounding the formation of the contract between the City and PTC are
uncontested: (1) the City solicited bids for supplying fuel; (2) PTC won the
contract to supply the City=s fuel needs; (3) the City Council met on June 29, 2005, and
voted to approve the contract award to PTC; (4) an award letter was sent on
July 6, 2005, confirming the award; (5) the contract documents were not signed
by the mayor and countersigned by the city controller, (6) the City began to
place orders on July 12, 2005; (7) the City ceased ordering fuel from PTC in
May 2006; and (8) PTC sued for breach of contract on December 12, 2006.  A
legal issue remains as to the efficacy of the contract between the City and PTC
that must be resolved to determine the trial court=s subject matter jurisdiction.  See
Miranda, 133 S.W.3d at 227; see also Bland, 34 S.W.3d at 555. 

In arguing that a contract is not Aproperly executed@ if it has not been signed by the
mayor and city controller, the City relies upon Article II, section 19 of the 1905
City Charter. It states: 

No contract shall be entered into until after an
appropriation has been made therefor, nor in excess of the amount appropriated,
and no contract shall be binding upon the city unless it has been signed by the
mayor and countersigned by the controller, and the expense thereof charged to
the proper appropriation, and whenever the contract charged to any
appropriation equals the amount of said appropriation, no further contracts
shall be countersigned by the controller.

 

City of Houston Charter, art. II, '19 (Act of March 18, 1905, 29th Leg.,
R.S., ch. 17, art. II, ' 1, 1905 Tex. Gen. Laws 131, 131, amended Jan. 27, 1968,
amended Aug. 14, 1982).  

This court rejected the City=s argument in City of Houston v.
Clear Channel Outdoor, Inc., 233 S.W.3d 441 (Tex. App.CHouston [14th Dist.] 2007, no pet.). 
In that case, the City asserted immunity from suit in response to a breach of
contract action filed against it by Clear Channel.  The City argued B as it does here B that the contract was not Aproperly executed@ because it was not signed by the
mayor and city controller.  Id. at 446.  The City relied B as it does here B on the 1905 City Charter.  Id. 









This court held that a properly
executed contract was established by the combination of (1) the contract
document; and (2) the City Council=s passage of an accompanying motion
that constituted Athe last step needed to complete the written contract between
the parties.@  Id.  AThe City=s contention that the signatures of the mayor and the city
controller are required arguably conflates the issue of whether the contract is
binding under the charter B a question that goes to the merits of the case B with the issue of whether it was
properly executed on the City=s behalf.@  Id.  

Clear Channel=s  holding applies with equal
force here based on the combination of (1) the contract documents; and (2) the
passage of Council Motion 2005-0636 approving the PTC contract.  Taken
together, these documents and actions Aconstitute a written contract as that
term is used in section 271.151.@  Id. at 447.  The trial court
properly overruled the City=s plea to the jurisdiction.  Id.

Under the circumstances here B and in conformity with Clear
Channel B the contract between the City and PTC was Aproperly executed@ notwithstanding the absence of the
mayor=s and city controller=s signatures.  Therefore, section
271.152 waives the City=s immunity from suit on PTC=s beach of contract claim.

The City=s appellate challenge is overruled
with respect to PTC=s claim for breach of contract.

Lost Profits

The City next contends that the trial
court erred in denying its plea to the jurisdiction because it is immune from
suit for consequential damages flowing from a breach of contract, including
lost profits.

Section  271.153 of the Local
Governmental Code establishes limits on an award in a breach of contract
action: 

(a) The total amount of money awarded in an
adjudication brought against a local governmental entity for breach of a
contract subject to this subchapter is limited to the following:








(1) the balance due and owed by the local governmental
entity under the contract as it may have been amended, including any amount
owed as compensation for the increased cost to perform the work as a direct
result of owner-caused delays or acceleration; 

(2) the amount owed for change orders or additional
work the contractor is directed to perform by a local governmental entity in
connection with the contract; and 

(3) interest as allowed by law.

(b) Damages awarded in an adjudication brought against
a local governmental entity arising under a contract subject to this subchapter
may not include:

(1) consequential damages, except as expressly allowed
under Subsection (a)(1);

(2) exemplary damages; or 

(3) damages for unabsorbed home office overhead.  

 

Tex. Loc. Gov=t Code Ann. ' 271.153 (Vernon 2005).  PTC seeks
$75,000 for fuel already delivered as authorized by section 271.153(a).  PTC
also seeks lost profits of $189,000 for failure to purchase diesel fuel and
$138,000 for failure to purchase gasoline, for a total of $327,000 in lost
profits.  

Section 271.153(b) prohibits
consequential damages except those specifically allowed in subsection (a)(1).  See
Tex. Loc. Gov=t Code Ann. ' 271.153(a) (Vernon 2005).  Lost profits are consequential
damages under 271.153.  Tooke, 197 S.W.3d at 346.  Because lost profits
are not specifically allowed in section 271.153(a)(1), they are foreclosed by
section 271.153(b)(1).  Id.  

PTC argues that we should disregard Tooke,
stating:

Tooke is not
sound authority on this issue.  In one conclusory paragraph, the Tooke court
makes a sweeping generalization that Texas law provides that all lost
profits are consequential damages.  Based upon this faulty premise, Tooke erroneously
concludes that Section 271.153 excludes all lost profits from recovery.[3]

 








We decline PTC=s invitation to disregard Tooke. 
The Texas Supreme Court clearly stated that Alost profits . . . are consequential
damages excluded from recovery@ under section 271.153.  PTC argues that the Texas Supreme
Court should have held that profits under a contract (as opposed to A[p]rofits lost on other contracts or
relationships resulting from the breach@) are  more properly categorized as
direct damages.  Whatever the merits of PTC=s proposed distinction between
species of lost profits,  Tooke=s plain language forecloses that distinction. 
Tooke is binding and we will follow it.[4]


The City=s appellate challenge is sustained as
to the portion of PTC=s claim relating to lost profits.  

Quantum Meruit

The City argues that the trial court
erred in denying its plea to the jurisdiction because it is immune from suit on
PTC=s quantum meruit claim.  

While section 271.152 of the Local
Government Code waives immunity from suit for breach of contract, this section
does not apply to claims in quantum meruit.  City of Houston v.
Swinerton Builders, Inc., 233 S.W.3d 4, 12-13 (Tex. App.CHouston [1st Dist.] 2007, no pet.)
(section 271.152 waives sovereign immunity only for breach of contract and Alists no other claims, either in law
or in equity;@ therefore, Section 271.152 does not apply to claims for quantum
meruit); see also H & H Sand and Gravel, Inc. v. City of Corpus
Christi, No. 13-06-00677-CV, 2007 WL 3293628, at *3 (Tex. App.CCorpus Christi Nov. 8, 2007, pet.
denied) (claims in equity, including waiver by acceptance of material and
benefit and detrimental reliance are not encompassed by section 271.152=s limited waiver).

The City=s appellate challenge is sustained as
to PTC=s quantum meruit claim.

 

 








Attorney=s Fees

The City contends that the trial
court erred in denying its plea to the jurisdiction because it is immune from
suit for attorney=s fees in connection with its breach of contract claim. 
Section 271.159 governs the award of attorney=s fees for claims allowed under
section 271.152 and states:

Attorney=s
fees incurred by a local governmental entity or any other party in the
adjudication of a claim by or against a local governmental entity shall not be
awarded to any party in the adjudication unless the local governmental entity
has entered into a written agreement that expressly authorizes the
prevailing party in the adjudication to recover its reasonable and necessary
attorney=s fees by specific reference to this section.

 

Tex. Loc. Gov=t Code Ann. ' 271.159 (Vernon 2005) (emphasis
added).  Section 271.159=s effective date is September 1, 2005.  PTC=s contract was approved in June 2005,
and PTC began delivery of fuel under that contract in July 2005.  Therefore, section
271.159 establishes no waiver of immunity from suit unless that section applies
retroactively. 

 The statute addresses retroactivity
as follows:

Sections 271.152, 271.153, and 271.154, Local
Government Code, as added by this Act, apply to a claim that arises under a
contract executed before the effective date [Sept. 1, 2005] of this Act only if
sovereign immunity has not been waived with respect to the claim before the
effective date of this Act. A claim that arises under a contract executed
before the effective date of this Act and with respect to which sovereign
immunity has been waived is governed by the law in effect on the date the
contract was executed, and the former law is continued in effect for that
purpose.

 

Act of May 23, 2005, 79th Leg., R.S.,
ch. 604, ' 2, 2005 Tex. Gen. Laws 1548, 1549; see also Tooke, 197 S.W.3d at
329 n.7. 








In contrast to section 271.152,
section 271.159 governing attorney=s fees is omitted from the list of
retroactive provisions.[5]  Because
section 271.159 does not apply retroactively, this provision cannot establish
the necessary waiver of immunity from suit with regard to PTC=s claim for attorney=s fees.[6]


The City=s appellate challenge is sustained as
to PTC=s claim for attorney=s fees.

Conversion

The City contends that the trial
court erred in denying its plea to the jurisdiction because it is immune from
suit on PTC=s intentional tort claim for conversion.[7] 
PTC=s First Amended Petition alleges that
the City Ahas improperly, and without authorization, retained possession and
control over diesel fuel belonging to PTC.@  PTC also alleges that the City
intentionally induced PTC to deliver diesel fuel and then refused to pay for
it, resulting in conversion.

The fuel purchases at issue here are
a governmental function for the reasons discussed above in connection with PTC=s contract claim.  Because the fuel
purchases are a governmental function, immunity applies unless waived by
statute.  See Ethio Express Shuttle Serv., Inc., 164 S.W.3d at 754 n.4
& 756-57.  The Texas Tort Claims Act does not waive immunity for
intentional torts.  See Tex. Civ. Prac.& Rem. Code Ann. ' 101.057 (Vernon 2006).  Therefore,
immunity applies.

The City=s appellate challenge is sustained with
respect to PTC=s conversion claim.








Conclusion

The trial court=s orders on the City=s plea to the jurisdiction are
affirmed in part and reversed in part.  We affirm the denial of the City=s plea to the jurisdiction on PTC=s breach of contract claim.  We
reverse the denial of the City=s plea to the jurisdiction on PTC=s claims for lost profits, quantum
meruit, attorney=s fees, and conversion.  We remand this case for proceedings
consistent with this opinion.  

 

 

 

/s/        William J. Boyce

Justice

 

Judgment rendered and Opinion filed
July 24, 2008.

Panel consists of Justices Yates,
Guzman and Boyce.









[1]           The PTC contract was approved on June 29,
2005.  Section 271.152=s effective date is September 1, 2005.  Section
271.152 was intended to have retroactive effect in all cases in which waiver
of  immunity was not already effected through an existing waiver.  See
Tooke, 197 S.W.3d at 329 n.7.  Therefore, section 271.152 applies to PTC=s contract claim.





[2]           This second contention is not substantively
different from the first.  It is premised upon the contention that a contract
not signed by the mayor and countersigned by the controller is not
constitutionally or statutorily sound, and thus no valid statutory or constitutional
waiver of immunity from suit exists for unsigned contracts.





[3]           The emphasis is PTC=s.





[4]           Like section 271.152, section 271.153 also
was intended to apply retroactively in all cases in which waiver of  immunity
was not already effected through an existing waiver of immunity.  See Tooke,
197 S.W.3d at 329 n.7.  Therefore, section 271.153 applies retroactively to
the PTC contract approved on June 29, 2005.





[5]           In City of Houston v. Allco, Inc.,
238 S.W.3d 849, 854-55 (Tex. App.CHouston
[1st Dist.] 2007, pet. denied), the court noted the invocation of 271.152 to
waive the City=s immunity from suit, and noted that the request for
attorney=s fees failed to reference 271.159 as required.  The
contract predated section 271.152 by 10 years.  The court did not address
retroactivity because Allco did not incur the attorney=s fee expense in the prosecution of its claim of
breach; instead those fees stemmed from fighting the City=s restraining order.  Recovery for those attorney=s fees was allowed for in the contract. 





[6]           Section 38.001 of the Civil Practice & Remedies Code
does not authorize an award of attorney=s fees against a municipality.  See Tex. A&M Univ. B Kingsville v. Lawson, 127
S.W.3d 866, 874 (Tex. App.CAustin 2004,
pet. denied); Base-Seal, Inc. v. Jefferson County, 901 S.W.2d 783, 787
(Tex. App.CBeaumont 1995, writ denied);  State v. Bodisch,
775 S.W.2d 73, 75-76 (Tex. App.CAustin 1989,
writ denied). 





[7]           PTC also alleged that the City=s use of the fuel without paying for it constituted a
taking.  The trial court granted the City=s
plea to the jurisdiction on the taking claim, and PTC has not challenged that
ruling on appeal.