CITY OF HOUSTON, Appellant

v.

ALLCO, INC., Appellee.

No. 01–02–00812–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 18, 2007.

Rehearing Overruled Nov. 28, 2007.

Bertrand L. Pourteau II, Houston, TX,
for Appellant.

Robert A. Plessala, Cokinos, Bosien & Young, Houston, TX, for Appellee.

Panel consists of Justices TAFT, HANKS, and HIGLEY.

## OPINION ON REMAND

LAURA CARTER HIGLEY, Justice.

The Supreme Court of Texas remanded this case to us for a determination of whether the City of Houston's immunity from suit is waived pursuant to Local Government Code sections 271.151–.160. *City of Houston v. Allco, Inc.,* 206 S.W.3d 113, 114 (Tex.2006).

We affirm.

### Factual and Procedural Background

In 1994, Allco entered into a contract ("the contract") with the City of Houston ("the City") to provide "sewer rehabilitation services." The contract contemplated that Allco would be entitled to compensation for "extra work," i.e., work that was not already approved under the contract. To receive such compensation the contract required that Allco give notice to and obtain approval from the City's engineer for the extra work before the work was undertaken. The contract also provided that, subject to the City engineer's approval, Allco was entitled to compensation "when direct and unavoidable extra cost to [Allco] is caused by the failure of the City to provide information or material, if any, which is to be furnished by the City."

Unrelated to the contract, residents of the Kennedy Heights region of Houston filed a toxic tort suit in 1995 against Chevron U.S.A., Inc. in Texas state court. The residents alleged that Chevron contaminated the soil in their neighborhoods with petroleum by-products. On July 10, 1995, the state court ordered the City to notify counsel for the tort plaintiffs of any sewer work being performed in the Kennedy Heights subdivision. That order was dissolved by further order on August 11, 1995.

In June 1996, Allco was conducting sewer rehabilitation work for the City under work order number 38 in the Crestmont subdivision—an area included within the scope of the Kennedy Heights tort litigation. At that time, the City had not informed Allco of the Kennedy Heights litigation filed in state court. Also unknown to Allco, another lawsuit had been filed by Kennedy Heights residents in Houston federal court. On June 18, 1996, at 5:10 p.m., a federal marshal served Allco with a temporary restraining order signed by the federal judge in the second Kennedy Heights suit. The order required Allco to cease further excavation work on the Crestmont project. At that time, Allco had 70 to 80 open trenches in the Crestmont subdivision. Allco faxed a copy of the temporary restraining order to the City's public works department.

The following day, Allco entered into an agreed order, which required Allco to establish a plan to "rope off" the construction site and areas where the excavated dirt was stored and to provide the tort plaintiffs access to monitor the site. Allco hauled the dirt, which had been excavated prior to Allco's receiving the restraining order, to an esplanade where the dirt was covered and a fence was erected.

Although the contract permitted Allco to use the excavated dirt to refill the trenches it had dug, Allco believed that the language of the agreed order, requiring it to secure the dirt, prevented Allco from using that dirt to refill the trenches. As a result, Allco purchased and trucked in new dirt—an expense it would not have normally incurred under the contract. During these activities, city inspectors were present at the work site.

On June 21, 1996, an assistant city attorney sent Allco a letter, demanding that Allco dispose of the "excess excavated material and debris." If Allco did not do as requested, the assistant city attorney warned that Allco would be in breach of the contract. After receiving the letter, Allco paid for the transport and disposal of the excavated dirt. As part of the disposal process, Allco hired a company to test the excavated dirt to determine whether it was contaminated. By the end of July 1996, the excavated dirt had been trucked to a landfill for disposal at Allco's expense.

On February 10, 1998, Allco submitted a claim to the City for the extra work associated with the Kennedy Heights litigation. The city attorney denied the claim six months later. In April 1999, Allco sought approval for the extra work from the City's engineer. The City did not respond.

Allco filed suit against the City, alleging breach of contract and seeking $89,306.43 in damages for the extra work it had completed in the Crestmont subdivision. Following a bench trial, the trial court signed a judgment in favor of Allco. The court found that Allco was entitled only to part of the damages it requested, awarding Allco $27,468.88 in damages, which represented the cost of testing, of moving, and of ultimately disposing of the excavated dirt, and included $1,375.00 in attorney's fees paid by Allco to defend against the federal court restraining order.

In support of its judgment, the trial court signed findings of fact and conclusions of law, including the following findings: (1) the contract provides for extra work; (2) the contract "requires notice, relative to extra costs, and Allco used this format in complying with the claim filing process"; (3) Allco reasonably believed that the assistant city attorney instructed it to remove the soil; (4) Allco reasonably responded to the agreed order and the assistant city attorney's directive in removing the excavated soil; (5) Allco detrimentally relied on the directive of the assistant city attorney and the agreed order in making its decision to remove the excavated dirt; (6) Allco would have sought written authorization from the City for the extra work had the City informed Allco of the Kennedy Heights litigation; and (7) Allco acted reasonably and in the interest of public safety in removing potentially contaminated soil.

The City appealed the trial court's judgment to this Court. Among its contentions on appeal, the City asserted that Allco was not entitled to reimbursement for the extra work associated with the Kennedy Heights litigation because Allco had not complied with the contract by obtaining approval from the City's engineer before commencing the extra work. We disagreed, concluding that the City, by its conduct, had waived the contractual notice and approval requirements with regard to extra work. *City of Houston v. Allco, Inc.,* No. 01-02-000812-CV, 2004 WL 1471818 at *4-5 (Tex.App.-Houston [1st Dist.] 2004, July 1, 2004), *rev'd on other grounds,* 206 S.W.3d at 114. In upholding the trial court's breach of contract award to Allco, we wrote,

> Assuming the contract provisions at issue in this case are conditions precedent to the City's contractual obligation to pay Allco for extra work, the controlling findings of fact in this case support a conclusion that the City waived performance of these conditions by its words and deeds. Specifically, the findings of fact relating to the City's failure to inform Allco of the Kennedy Heights litigation and the assistant city attorney's directive to dispose of the excavated soil support such conclusion.

*Id.* at *5. We also concluded that Allco was entitled to the compensation awarded by

the trial court because equity would not permit the enforcement of a forfeiture under a contract in an inequitable and oppressive manner. *Id.* In other words, we concluded that Allco should not be required to forfeit its right to compensation under the contract for lack of notice and approval from the City, given the City's conduct and the public safety concerns at issue. *See id.*

In its appeal, the City also asserted that it was immune from suit. Following our own precedent and that of the supreme court, we held that the City had waived its immunity from suit because the City's charter provided that the City could "sue and be sued." *Id.* at *3. Nearly two years after our decision, the supreme court handed down *Tooke v. City of Mexia* in which it held, for the first time, that a "sue and be sued" provision in a city charter does not, by itself, constitute an unambiguous waiver of governmental immunity. 197 S.W.3d 325, 344 (Tex.2006). Citing *Tooke,* the supreme court overruled our decision that the "sue and be sued" clause waived the City's immunity from suit. *Allco,* 206 S.W.3d at 114. Nevertheless, the supreme court did not hold that the City was immune from suit. The supreme court recognized that, while this case was pending in the supreme court,

> the Legislature [] enacted sections 271.151–.160 of the Local Government Code, which waive immunity from suit for certain claims against local governmental entities, including municipalities. Sections 271.152–.154 'apply to a claim that arises under a contract executed before [September 1, 2005] . . . if sover-

eign immunity has not been waived with respect to the claim' before that date. *Id.* (citing Act of May 23, 2005, 79th Leg., R.S., ch. 604, § 2, 2005 Tex. Gen. Laws 1548, 1549). The supreme court remanded this case to us solely on the basis that "Allco should have the opportunity to argue in the court of appeals that the City's immunity from suit is waived by these provisions."[1] *Id.* Accordingly, we determine whether the City's immunity from suit is waived pursuant to Local Government Code sections 271.151–.160.

### Statutory Waiver of Immunity

### A. Statutory Provisions

Local Government code section 271.152 provides,

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this Subchapter.

Tex. Loc. Gov't Code Ann. § 271.152 (Vernon 2005). Section 271.153, entitled "Limitation on Adjudication Awards," limits and defines the damages that may be recovered against a local government entity, as follows:

> (a) The total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to this subchapter is limited to the following:
>
> > (1) the balance due and owed by the local governmental entity under the contract as it may have been amend-

---

1. Without citing authority, the City contends in its supplemental briefing on remand that this matter should be remanded to the trial court for determination, rather than to this Court. Such an argument more properly would have been raised to the supreme court in a motion for rehearing. We are bound by the mandate of the supreme court and thus must consider the issue on remand as specified in *City of Houston v. Allco, Inc.,* 206 S.W.3d 113, 114 (Tex.2006).

ed, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

(2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract; and

(3) interest as allowed by law.

(b) Damages awarded in an adjudication brought against a local governmental entity arising under a contract subject to this subchapter may not include:

(1) consequential damages, except as expressly allowed under Subsection (a)(1);

(2) exemplary damages; or

(3) damages for unabsorbed home office overhead.

*Id.* § 271.153 (Vernon 2005).

In this case, the parties do not dispute that the City is "a local governmental entity" and that the contract at issue is a "contract subject to this subchapter" because it is a "written contract stating the essential terms of the agreement for providing goods or services to [a] local governmental entity that [was] properly executed on behalf of the local governmental entity." *See id.* § 271.151(2), (3)(A). Instead, the dispute in this case centers on whether Allco's damages are statutorily permitted. This is the issue that we determine.

## B. Analysis

■ The contract between Allco and the City contemplated that, subject to the approval of the City's engineer, Allco would be compensated for the costs of extra work it performed. As mentioned, the trial court awarded Allco $27,468.88 for the costs it incurred to test, to move, and to ultimately dispose of the excavated dirt,

and for the $1,375 in attorney's fees paid by Allco to defend against the federal court restraining order. Allco sued for these out-of-pocket costs as direct damages owed under the contract. Among the legal theories Allco advanced in the trial court to support this recovery was its claim that it was entitled to these costs under the contract's extra work provisions and under the provision specifying that Allco was entitled to compensation for costs incurred as a result of the City's failure to furnish information. That is, under its theory of the case, Allco was seeking "the balance due and owed by [the City] under the contract." *Id.* § 271.153(a)(1). Accordingly, the damages sought and recovered by Allco were permitted by Local Government Code section 271.153(a)(1).

■ The City contends that Allco is not entitled to compensation for the cost of testing the excavated soil because the testing was neither a cost authorized under the contract nor was it approved by the City as an extra work cost. Allco points out that we recently held in *City of Houston v. Swinerton Builders, Inc.* that Local Government Code section 271.152 waives the City's immunity from suit for certain breach of contract claims only and does not waive the City's immunity for quantum meruit claims or other "claims in law or in equity." 233 S.W.3d 4, 12 (Tex.App.-Houston [1st Dist.] no pet.). The City argues that, "[u]nless the Contract addressed separate or additional payment for this activity [soil testing], Allco would be relegated to a claim in quantum meruit...."

We disagree that Allco's claim to recover the cost of the soil testing was based on a separate claim for quantum meruit. Allco has never wavered from its position, neither in the trial court nor in this Court, that it was entitled to recover the cost of the soil testing under the express provi-

sions of the contract. On remand, Allco cites the contract provision permitting it to recover extra costs incurred as a result of the City's failure to provide information as a basis to recover the cost of soil testing. That provision sets no limitation on the type of extra costs that can be recovered. Moreover, there is no indication in the record that the trial court awarded the cost of the soil testing as a measure of quantum meruit damages; to the contrary, every indication is that the trial court awarded the damages as measure of breach of contract damages. In sum, Allco's request for compensation and its recovery regarding the cost of the soil testing arose from Allco's breach of contract claim, not from a quantum meruit claim.

The City also contends on remand that the cost of hauling and disposing of the excavated soil was a cost included in the contract price and was not recoverable as an extra cost under the contract. In this regard, the City relies on the trial court's finding of fact that "[t]he Contract provided that the cost of hauling and disposing excess excavated material and debris is to be included in the price bid for the relevant item requiring excavation."

The City's contention that the contract itself expressly prohibited the recovery of these damages was an argument to have been raised by the City in the trial court and in its initial appellate briefing to this Court when it first appealed the trial court's judgment. Whether the contract prohibited the costs of hauling and disposing of the excavated dirt is not the issue before us on remand. The limited issue we are presented with is whether these costs are the type of damages permitted by Local Government Code section 271.153. As discussed, in support of its breach of contract claim, Allco sought the costs of hauling and disposing of the excavated dirt as a direct damage under the

express provisions of the contract. That is, Allco argued in the trial court that these costs were due and owed under the contract. Such damages are the type permitted pursuant to section 271.153. *See* Tex. Loc. Gov't Code Ann. § 271.153(a)(1).

■ Lastly, the City contends that Local Government Code section 271.159 prohibits Allco's recovery of the $1,375 in attorney's fees paid by Allco to defend against the federal court restraining order. Section 271.159 provides,

> Attorney's fees incurred by a local governmental entity or any other party in the adjudication of a claim by or against a local governmental entity shall not be awarded to any party in the adjudication unless the local governmental entity has entered into a written agreement that expressly authorizes the prevailing party in the adjudication to recover its reasonable and necessary attorney's fees by specific reference to this section.

Tex. Loc. Gov't Code Ann. § 271.159 (Vernon 2005).

Noting that the contract pre-dated section 271.159 by 10 years, the City asserts that Allco cannot recover the attorney's fees because the contract does not reference section 271.159, as required by that provision. We agree with Allco that section 271.159 is not applicable to the $1,375 in attorney's fees awarded Allco.

The attorney's fees were not "incurred by a local governmental entity or any other party in the adjudication of a claim by or against a local governmental entity," as specified in section 271.159. Rather, Allco incurred the attorney's fees defending against the federal restraining order. Allco requested the attorney's fees as direct damages owed under the provisions of the contract, and not as attorney's fees owed for the prosecution of the instant suit. As with the other costs claimed by Allco in

conjunction with the Kennedy Heights litigation and due under the contract, Allco was entitled to these costs as provided in Local Government Code section 271.153(a)(1).

### Conclusion

We conclude that the damages sought and awarded by the trial court were permitted by Local Government Code section 271.153(a)(1). We hold that the City's immunity from suit is statutorily waived with respect to Allco's breach of contract claim.

We affirm the judgment of the trial court.