THE CITY OF HOUSTON, Appellant

v.

PETROLEUM TRADERS CORPORATION, Appellee.

No. 14–07–00752–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 24, 2008.

---

Bertrand L. Pourteau, II, Houston, TX, for appellants.

Arthur Samuel Feldman, Houston, TX, Daniel D. Bobilya, Fort Wayne, IN, for appellees.

Panel consists of Justices YATES, GUZMAN and BOYCE.

## OPINION

WILLIAM J. BOYCE, Justice.

The City of Houston appeals from orders denying its plea to the jurisdiction on the claims of Petroleum Traders Corporation ("PTC") for (1) breach of contract; (2) lost profits; (3) *quantum meruit;* (4) attorney's fees; and (5) conversion. We conclude that the contract between the City and PTC was properly executed, and the City's immunity from suit on PTC's contract claim has been waived by statute. We further conclude that the City is immune from suit on PTC's remaining claims. Accordingly, we affirm in part and reverse in part.

### Background

In 2005, the City of Houston solicited bids from fuel suppliers through its Strate-

gic Purchasing Division. This division provided certain documents to the bidding suppliers, including a Letter of Clarification; Section A–Official Bid Form; Section B–Technical Specifications; Section C–General Terms and Conditions; and various attachments. The City assigned these documents the identifying number SC–R–9310–098–20598.

The Letter of Clarification refers to Sections A through C as both a contract and a bid document, with subsequent letters of clarification incorporated into all bids. Section A–Official Bid Form states: "This offer shall be irrevocable for 120 days after bid opening or for 90 days after City Council awards the bid, whichever comes last. . . ." This section also states that acceptance may be by issuance of a Notice of Award Letter and/or a Purchase Order.

PTC was among those who bid in March 2005 for the right to provide fuel to the City. PTC filled out the bid documents and submitted them to the City for consideration. PTC's bid was deemed the lowest responsible bid.

City Purchasing Agent Calvin D. Wells thereafter prepared a Request for Council Action to be heard on June 29, 2005. The Request for Council Action was approved at the June 29, 2005 City Council meeting. A Notice of Award Letter was sent on July 6, 2005 stating:

> I am pleased to inform you that the referenced contract was approved for award to your firm by Council Motion 2005–0636 for a thirty-six (36) month period for the items referenced. A copy of the Council Motion, if needed, may be obtained by calling (713) 247–1745. This letter is official notification to proceed and authorizes your firm to accept purchase orders effectively from July 5, 2005.

At the top of the letter, just beneath the City of Houston letterhead, date, and ad-dress of PTC, the letter contained this information:

*NOTIFICATION OF AWARD*

> *RE: Fuel, Low Sulfur Diesel and Reformulated Gasoline for the Finance and Administration Department.*
>
> *SC–R–9130–098–20598/Line Item nos. 1–5, 6a, 9b and 7a*
>
> *Estimated Award Amount: $64,347, 000.00/Passed June 29, 2005.*

The City began to place fuel orders with PTC on July 12, 2005, and PTC began to fill those orders. The City accepted and used approximately 42,000 gallons of fuel. The City paid invoices for that fuel until May 12, 2006, when the City stopped ordering fuel from PTC and began to use a different source.

PTC filed suit on December 12, 2006, alleging claims for breach of contract and *quantum meruit.* The City filed a plea to the jurisdiction on March 21, 2007, asserting that it is immune from suit. On July 13, 2007, PTC added claims for taking and conversion. The City supplemented its plea to the jurisdiction on July 24, 2007—in part to argue it had not waived immunity by engaging in a proprietary function—and filed a second plea to the jurisdiction on August 21, 2007 to address the new taking and conversion claims. On August 23, 2007, the trial court signed an order denying the City's first plea to the jurisdiction. On September 10, 2007 the trial court signed an order granting the City's plea to the jurisdiction on the taking claim and denying it on the conversion claim.

The City filed this appeal, and now challenges the denials of its plea to the jurisdiction. This court has appellate jurisdiction to consider an interlocutory order denying a governmental unit's plea to the jurisdiction. Tex. Civ. Prac. & Rem.Code § 51.014(a)(8) (Vernon Supp.2007).

## Standard of Review

A plea to the jurisdiction based on governmental immunity challenges a trial court's subject matter jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000); *Dahl ex rel. Dahl v. State*, 92 S.W.3d 856, 860–861 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Subject matter jurisdiction is essential to a court's authority to act. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 448 n. 2 (Tex.1996). The plaintiff bears the burden to plead facts affirmatively demonstrating subject matter jurisdiction. *Holland*, 221 S.W.3d at 642. Upon a finding that the trial court lacks subject matter jurisdiction, the court must dismiss the suit. *Jansen v. Fitzpatrick*, 14 S.W.3d 426, 431 (Tex.App.-Houston [14th Dist.] 2000, no pet.). A plea to the jurisdiction raises a question of law reviewed *de novo* on appeal. *C.L. Westbrook, Jr. v. Penley*, 231 S.W.3d 389, 394 (Tex.2007); *Holland*, 221 S.W.3d at 642.

A plea to the jurisdiction can challenge either the pleadings or the existence of jurisdictional facts. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex.2004).

When a plea to the jurisdiction challenges plaintiff's pleadings, the determination pivots on whether the pleader has alleged sufficient facts to demonstrate the court's subject matter jurisdiction over the matter. *Id.* We construe pleadings liberally in the plaintiff's favor and look to the pleader's intent. *City of Carrollton v. Singer*, 232 S.W.3d 790, 795 (Tex.App.-Fort Worth 2007, pet. denied). When the pleadings neither allege sufficient facts nor demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.

2002). If the pleadings affirmatively negate jurisdiction, then the plea to the jurisdiction may be granted without leave to amend. *Id.*

When a plea to the jurisdiction challenges jurisdictional facts, we consider the evidence submitted by the parties to address the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 227. "If evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227–28.

Because governmental immunity involves both immunity from suit and immunity from liability, it is necessary to determine which form of immunity is being asserted. The City does not claim immunity from liability for payment due for fuel delivered under the PTC purchase orders. The City does claim immunity from suit, contending that no valid contract exists and no valid waiver of authority has been invoked. *See Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 256 S.W.3d 735, 739 (Tex.App.-Houston [14th Dist.] 2008, no pet. h) ("When a governmental entity enters into a contract, that entity waives immunity from liability and voluntarily binds itself, just as any other party would, to the terms of the contract, but that entity does not thereby waive immunity from suit").

## Analysis

The City contends the trial court erred in denying its plea to the jurisdiction on PTC's claims for (1) breach of contract; (2) lost profits; (3) *quantum meruit*; (4) attorney's fees; and (5) conversion. We address each claim in turn.

### Breach of Contract

The City contends that the trial court erred in failing to grant its plea to the

jurisdiction on PTC's breach of contract claim. PTC offers two arguments in support of its contention that the City is not immune from suit on a contract claim.

PTC first argues that the City's actions in contracting to procure fuel constitute a proprietary function to which no immunity from suit attaches.

█ In the tort context, "[d]etermining a municipality's amenability to suit is a two-step inquiry." *Ethio Express Shuttle Serv., Inc. v. City of Houston*, 164 S.W.3d 751, 754 n. 4 (Tex.App.-Houston [14th Dist.] 2005, no pet.). "First we determine whether the function is governmental or proprietary." *Id.* If the function is governmental, the second step of the analysis addresses whether immunity has been waived by statute. *Id.* at 756–57. "[C]ases involving claims against a city begin with the threshold question of whether the city was acting in a proprietary or governmental function." *Truong v. City of Houston*, 99 S.W.3d 204, 209 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *Bailey v. City of Austin*, 972 S.W.2d 180, 192 (Tex.App.-Austin 1998, pet. denied). PTC's first argument invites us to apply the governmental/proprietary dichotomy to a contract claim.

In addressing whether the governmental/proprietary dichotomy for tort claims also applies to contract claims, we seek guidance from *Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex.2006). In *Tooke*, the Texas Supreme Court addressed a suit to recover on an alleged breach of contract by the City. *Id.* at 343. The Tookes contended that their contract dispute with the City involved a proprietary function because the City cancelled their service contract early for budgetary reasons. *Id.* The supreme court stated, "[W]e have never held that [the governmental/proprietary] distinction determines whether immunity from suit is waived for breach of contract

claims, and we need not determine that issue here." *Id.* The court did not decide this issue because it concluded that the function at issue was governmental in any case-and did so based upon the criteria in section 101.0215 of the Texas Civil Practice & Remedies Code governing tort actions. *Id.* The Court found no reason to believe that the classification criteria for governmental versus proprietary functions would be different in tort and contract actions. *Id.* at 343–44.

█ As in *Tooke*, we need not decide whether the governmental/proprietary dichotomy applies in contract actions. Even assuming for argument's sake that the dichotomy does apply to PTC's contract claim, the fuel purchases at issue here are a governmental function. Therefore, PTC cannot contend that the fuel purchases are a proprietary function to which no immunity from suit applies.

In analyzing the correct classification, we begin with the Texas Constitution. It authorizes the Legislature to "define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law." Tex. Const. art. XI, § 13; *Tooke*, 197 S.W.3d at 343. Section 101.0215 of the Texas Civil Practice & Remedies Code was written to provide guidance in determining which functions are governmental and which are proprietary. A governmental function is "enjoined on a municipality by law and given to it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." Tex. Civ. Prac. & Rem.Code § 101.0215(a) (Vernon 2006). On the other hand, a proprietary function is one that "a municipality may, in its discretion, perform in the interest of the inhabitants of the

municipality...." Tex. Civ. Prac. & Rem. Code § 101.0215(b) (Vernon 2005).

Among those functions the Legislature has denominated as "governmental" are police and fire protection, garbage collection, operation of emergency ambulance service, and vehicle and motor driven equipment maintenance. *See* Tex. Civ. Prac. & Rem.Code § 101.0215(a)(1), (6), (18), (24) (Vernon 2005). The City claims that the fuel purchases also are governmental because they are essential to these statutory governmental functions. PTC contends the City was engaging in a proprietary function when it purchased fuel and therefore enjoys no immunity from suit in tort. *See Tooke*, 197 S.W.3d at 343 ("A municipality is not immune from suit for torts committed in the performance of proprietary functions as it is for torts committed in the performance of governmental functions").

Courts repeatedly have recognized that governmental functions encompass activities that are closely related to or necessary for performance of the governmental activities designated by statute.

For example, in *Ethio Express Shuttle Service*, a private bus shuttle service sued the City for negligent misrepresentation, fraud, and tortious interference with contract. 164 S.W.3d at 753. The shuttle service contended that the City had waived immunity from suit by engaging in a proprietary function. *Id.* This court determined that the City's regulation of bus service to the airport was a governmental function, noting: "We would be remiss to hold that the City's activities are proprietary in a case in which they are so well aligned with the functions the Legislature has designated as governmental." *Id.* at 756; *see also City of San Antonio v. Butler*, 131 S.W.3d 170, 178 (Tex.App.-San Antonio 2004, pet. denied) ("courts have similarly held that all actions related to a designated government function are reclassified as governmental by the statute").

Because the operation of a shuttle service to the airport is closely related to functions on the non-exclusive list of actions deemed by the Legislature to be governmental—including airports, regulation of traffic and transportation systems—we concluded in *Ethio* that the city was immune from suit on the plaintiff's claims. *Ethio Express Shuttle Serv., Inc.*, 164 S.W.3d at 753; *see also City of San Antonio*, 131 S.W.3d at 177–78 (city was immune from tort suit arising from alcohol sales at concert because provision of alcohol was done under the umbrella of operating "civic, convention centers, or coliseums" designated as a governmental function under section 101.0215(a)(16)); *Tex. River Barges v. City of San Antonio*, 21 S.W.3d 347, 356–57 (Tex.App.-San Antonio 2000, pet. denied) (because the operation of a marina, among other properties, is a governmental function under section 101.0215(a)(23), immunity from suit applied to claims for conversion and interference with a prospective business relationship arising from removal of barge from marina); *Mitchell v. City of Dallas*, 855 S.W.2d 741, 744 (Tex.App.-Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex.1994) (because the maintenance of public parks is a governmental function under section 101.0215(a)(13), immunity prevented plaintiff from suing under the common law for minor son's injury in a bicycle accident in the park).

Similar reasoning applies here. Without fuel, the City would be unable to perform governmental tasks required for the public good. Therefore, the City's governmental functions encompass the procurement of fuel necessary to perform those specific tasks—including police and fire protection, garbage collection, operation of emergency ambulance service, and vehicle and motor

driven equipment maintenance—denominated by the Legislature as "governmental." *See* Tex. Civ. Prac. & Rem.Code § 101.0215(c)(1), (6), (18), (24) (Vernon 2005); *City of San Antonio,* 131 S.W.3d at 177 ("all activities associated with the operation of one of the government functions listed in section 101.0215(a) are governmental and cannot be considered proprietary, regardless of the city's motive for engaging in the activity ... actions related to a designated government function are reclassified as governmental by the statute").

■ Second, PTC argues that even if the fuel purchases at issue involve a governmental function, immunity from suit specifically has been waived in section 271.152 of the Local Government Code. PTC specifically pleaded section 271.152 in its petition. Section 271.152 states:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't Code Ann. § 271.152 (Vernon 2005).[1] Section 271.151(2) defines a "contract subject to this subchapter" as:

> [A] written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed

on behalf of the local governmental entity.

Tex. Loc. Gov't Code Ann. § 271.151(2) (Vernon 2005).

It is undisputed that the contract at issue here stated all essential terms and involved the provision of goods or services. The City contends that the trial court nonetheless erred in denying its plea to the jurisdiction because a contract is subject to section 271.152 only if it has been "properly executed." *Id.* The City says no "properly executed" contract exists between the City and PTC because the documents upon which PTC relies were not signed by the mayor and countersigned by the City's controller. The City further contends that "PTC has not plead that any statute or provision of the Constitution authorized Houston to enter into the Solicitation."[2]

The pertinent facts surrounding the formation of the contract between the City and PTC are uncontested: (1) the City solicited bids for supplying fuel; (2) PTC won the contract to supply the City's fuel needs; (3) the City Council met on June 29, 2005, and voted to approve the contract award to PTC; (4) an award letter was sent on July 6, 2005, confirming the award; (5) the contract documents were not signed by the mayor and countersigned by the city controller, (6) the City began to place orders on July 12, 2005; (7) the City ceased ordering fuel from PTC in May 2006; and (8) PTC sued for breach of contract on December 12, 2006. A legal issue remains as to the efficacy of the

---

1. The PTC contract was approved on June 29, 2005. Section 271.152's effective date is September 1, 2005. Section 271.152 was intended to have retroactive effect in all cases in which waiver of immunity was not already effected through an existing waiver. *See Tooke,* 197 S.W.3d at 329 n. 7. Therefore, section 271.152 applies to PTC's contract claim.

2. This second contention is not substantively different from the first. It is premised upon the contention that a contract not signed by the mayor and countersigned by the controller is not constitutionally or statutorily sound, and thus no valid statutory or constitutional waiver of immunity from suit exists for unsigned contracts.

contract between the City and PTC that must be resolved to determine the trial court's subject matter jurisdiction. *See Miranda,* 133 S.W.3d at 227; *see also Bland,* 34 S.W.3d at 555.

In arguing that a contract is not "properly executed" if it has not been signed by the mayor and city controller, the City relies upon Article II, section 19 of the 1905 City Charter. It states:

> No contract shall be entered into until after an appropriation has been made therefor, nor in excess of the amount appropriated, and no contract shall be binding upon the city unless it has been signed by the mayor and countersigned by the controller, and the expense thereof charged to the proper appropriation, and whenever the contract charged to any appropriation equals the amount of said appropriation, no further contracts shall be countersigned by the controller.

City of Houston Charter, art. II, § 19 (Act of March 18, 1905, 29th Leg., R.S., ch. 17, art. II, § 1, 1905 Tex. Gen. Laws 131, 131, amended Jan. 27, 1968, amended Aug. 14, 1982).

This court rejected the City's argument in *City of Houston v. Clear Channel Outdoor, Inc.,* 233 S.W.3d 441 (Tex.App.-Houston [14th Dist.] 2007, no pet.). In that case, the City asserted immunity from suit in response to a breach of contract action filed against it by Clear Channel. The City argued—as it does here—that the contract was not "properly executed" because it was not signed by the mayor and city controller. *Id.* at 446. The City relied—as it does here—on the 1905 City Charter. *Id.*

This court held that a properly executed contract was established by the combination of (1) the contract document; and (2) the City Council's passage of an accompanying motion that constituted "the last step needed to complete the written con-

tract between the parties." *Id.* "The City's contention that the signatures of the mayor and the city controller are required arguably conflates the issue of whether the contract is binding under the charter—a question that goes to the merits of the case—with the issue of whether it was properly executed on the City's behalf." *Id.*

*Clear Channel's* holding applies with equal force here based on the combination of (1) the contract documents; and (2) the passage of Council Motion 2005–0636 approving the PTC contract. Taken together, these documents and actions "constitute a written contract as that term is used in section 271.151." *Id.* at 447. The trial court properly overruled the City's plea to the jurisdiction. *Id.*

Under the circumstances here—and in conformity with *Clear Channel*—the contract between the City and PTC was "properly executed" notwithstanding the absence of the mayor's and city controller's signatures. Therefore, section 271.152 waives the City's immunity from suit on PTC's beach of contract claim.

The City's appellate challenge is overruled with respect to PTC's claim for breach of contract.

### Lost Profits

 The City next contends that the trial court erred in denying its plea to the jurisdiction because it is immune from suit for consequential damages flowing from a breach of contract, including lost profits.

Section 271.153 of the Local Governmental Code establishes limits on an award in a breach of contract action:

> (a) The total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to this subchapter is limited to the following:

(1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

(2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract; and

(3) interest as allowed by law.

(b) Damages awarded in an adjudication brought against a local governmental entity arising under a contract subject to this subchapter may not include:

(1) consequential damages, except as expressly allowed under Subsection (a)(1);

(2) exemplary damages; or

(3) damages for unabsorbed home office overhead.

Tex. Loc. Gov't Code Ann. § 271.153 (Vernon 2005). PTC seeks $75,000 for fuel already delivered as authorized by section 271.153(a). PTC also seeks lost profits of $189,000 for failure to purchase diesel fuel and $138,000 for failure to purchase gasoline, for a total of $327,000 in lost profits.

Section 271.153(b) prohibits consequential damages except those specifically allowed in subsection (a)(1). *See* Tex. Loc. Gov't Code Ann. § 271.153(a) (Vernon 2005). Lost profits are consequential damages under 271.153. *Tooke*, 197 S.W.3d at 346. Because lost profits are not specifically allowed in section 271.153(a)(1), they are foreclosed by section 271.153(b)(1). *Id.*

PTC argues that we should disregard *Tooke*, stating:

> *Tooke* is not sound authority on this issue. In one conclusory paragraph, the *Tooke* court makes a sweeping generalization that Texas law provides that **all** lost profits are consequential damages. Based upon this faulty premise, *Tooke* erroneously concludes that Section 271.153 excludes **all** lost profits from recovery.[3]

We decline PTC's invitation to disregard *Tooke*. The Texas Supreme Court clearly stated that "lost profits ... are consequential damages excluded from recovery" under section 271.153. PTC argues that the Texas Supreme Court should have held that profits under a contract (as opposed to "[p]rofits lost on other contracts or relationships resulting from the breach") are more properly categorized as direct damages. Whatever the merits of PTC's proposed distinction between species of lost profits, *Tooke's* plain language forecloses that distinction. *Tooke* is binding and we will follow it.[4]

The City's appellate challenge is sustained as to the portion of PTC's claim relating to lost profits.

### Quantum Meruit

 The City argues that the trial court erred in denying its plea to the jurisdiction because it is immune from suit on PTC's *quantum meruit* claim.

 While section 271.152 of the Local Government Code waives immunity from suit for breach of contract, this section does not apply to claims in *quantum meruit*. *City of Houston v. Swinerton Build-*

---

3. The emphasis is PTC's.

4. Like section 271.152, section 271.153 also was intended to apply retroactively in all cases in which waiver of immunity was not already effected through an existing waiver of immunity. *See Tooke*, 197 S.W.3d at 329 n. 7. Therefore, section 271.153 applies retroactively to the PTC contract approved on June 29, 2005.

*ers, Inc.,* 233 S.W.3d 4, 12–13 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (section 271.152 waives sovereign immunity only for breach of contract and "lists no other claims, either in law or in equity;" therefore, Section 271.152 does not apply to claims for *quantum meruit* ); *see also H & H Sand and Gravel, Inc. v. City of Corpus Christi,* No. 13–06–00677–CV, 2007 WL 3293628, at *3 (Tex.App.-Corpus Christi Nov. 8, 2007, pet. denied) (claims in equity, including waiver by acceptance of material and benefit and detrimental reliance are not encompassed by section 271.152's limited waiver).

The City's appellate challenge is sustained as to PTC's *quantum meruit* claim.

### Attorney's Fees

■ The City contends that the trial court erred in denying its plea to the jurisdiction because it is immune from suit for attorney's fees in connection with its breach of contract claim. Section 271.159 governs the award of attorney's fees for claims allowed under section 271.152 and states:

> Attorney's fees incurred by a local governmental entity or any other party in the adjudication of a claim by or against a local governmental entity shall not be awarded to any party in the adjudication unless the local governmental entity has entered into *a written agreement that expressly authorizes* the prevailing party in the adjudication to recover its reasonable and necessary attorney's fees *by specific reference to this section.*

Tex. Loc. Gov't Code Ann. § 271.159 (Vernon 2005) (emphasis added). Section 271.159's effective date is September 1, 2005. PTC's contract was approved in June 2005, and PTC began delivery of fuel under that contract in July 2005. Therefore, section 271.159 establishes no waiver of immunity from suit unless that section applies retroactively.

The statute addresses retroactivity as follows:

> Sections 271.152, 271.153, and 271.154, Local Government Code, as added by this Act, apply to a claim that arises under a contract executed before the effective date [Sept. 1, 2005] of this Act only if sovereign immunity has not been waived with respect to the claim before the effective date of this Act. A claim that arises under a contract executed before the effective date of this Act and with respect to which sovereign immunity has been waived is governed by the law in effect on the date the contract was executed, and the former law is continued in effect for that purpose.

Act of May 23, 2005, 79th Leg., R.S., ch. 604, § 2, 2005 Tex. Gen. Laws 1548, 1549; *see also Tooke,* 197 S.W.3d at 329 n. 7.

In contrast to section 271.152, section 271.159 governing attorney's fees is omitted from the list of retroactive provisions.[5] Because section 271.159 does not apply retroactively, this provision cannot establish the necessary waiver of immunity from suit with regard to PTC's claim for attorney's fees.[6]

**5.** In *City of Houston v. Allco, Inc.,* 238 S.W.3d 849, 854–55 (Tex.App.-Houston [1st Dist.] 2007, pet. denied), the court noted the invocation of 271.152 to waive the City's immunity from suit, and noted that the request for attorney's fees failed to reference 271.159 as required. The contract predated section 271.152 by 10 years. The court did not address retroactivity because Allco did not incur

the attorney's fee expense in the prosecution of its claim of breach; instead those fees stemmed from fighting the City's restraining order. Recovery for those attorney's fees was allowed for in the contract.

**6.** Section 38.001 of the Civil Practice & Remedies Code does not authorize an award of attorney's fees against a municipality. *See*

The City's appellate challenge is sustained as to PTC's claim for attorney's fees.

### Conversion

 The City contends that the trial court erred in denying its plea to the jurisdiction because it is immune from suit on PTC's intentional tort claim for conversion.[7] PTC's First Amended Petition alleges that the City "has improperly, and without authorization, retained possession and control over diesel fuel belonging to PTC." PTC also alleges that the City intentionally induced PTC to deliver diesel fuel and then refused to pay for it, resulting in conversion.

The fuel purchases at issue here are a governmental function for the reasons discussed above in connection with PTC's contract claim. Because the fuel purchases are a governmental function, immunity applies unless waived by statute. *See Ethio Express Shuttle Serv., Inc.*, 164 S.W.3d at 754 n. 4 & 756–57. The Texas Tort Claims Act does not waive immunity for intentional torts. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.057 (Vernon 2006). Therefore, immunity applies.

The City's appellate challenge is sustained with respect to PTC's conversion claim.

### Conclusion

The trial court's orders on the City's plea to the jurisdiction are affirmed in part and reversed in part. We affirm the denial of the City's plea to the jurisdiction on PTC's breach of contract claim. We reverse the denial of the City's plea to the jurisdiction on PTC's claims for lost profits, *quantum meruit*, attorney's fees, and conversion. We remand this case for proceedings consistent with this opinion.

---

*Tex. A & M University-Kingsville v. Lawson*, 127 S.W.3d 866, 874 (Tex.App.-Austin 2004, pet. denied); *Base–Seal, Inc. v. Jefferson County*, 901 S.W.2d 783, 787 (Tex.App.-Beaumont 1995, writ denied); *State v. Bodisch*, 775 S.W.2d 73, 75–76 (Tex.App.-Austin 1989, writ denied).

7. PTC also alleged that the City's use of the fuel without paying for it constituted a taking. The trial court granted the City's plea to the jurisdiction on the taking claim, and PTC has not challenged that ruling on appeal.