TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00504-CV






City of Elgin, Texas, Appellant


v.


John William Reagan, as next friend of J. W. R., Jr., a child, Appellee







FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT

NO. 25,463, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING



 

M E M O R A N D U M O P I N I O N


 Appellee John William Reagan sued the City of Elgin under the Texas Tort Claims
Act (TTCA), alleging that the City was negligent and grossly negligent in allowing Reagan's wife
to adopt a dog that later attacked the couple's young son. See Tex. Civ. Prac. & Rem. Code Ann.
§ 101.021(2) (West 2007). The City filed a joint plea to the jurisdiction and motion for summary
judgment, arguing that sovereign immunity barred Reagan's claims. In one order, the trial court
denied the plea to the jurisdiction and summary-judgment motion. The City appeals. Because we
determine that sovereign immunity shields the City from suit, we reverse the trial court's order and
render judgment dismissing Reagan's suit for want of subject-matter jurisdiction. 


BACKGROUND 

 The evidence submitted to the trial court by both parties with regard to the City's
joint plea to the jurisdiction and motion for summary judgment establishes the following factual
background: On August 19, 2003, Kari Reagan adopted an adult male Doberman from the City of
Elgin Animal Shelter. She first met the dog during a visit to the shelter about two weeks before the
adoption. During her initial visit, she spoke with Animal Control Officer Ethel Spence about the
dog. Kari testified in her deposition that Spence told her that she knew the dog was good with
children because the dog was brought into the shelter by children who had to move and could not
take the dog with them. Spence said that she was unsure how the dog would behave around other
dogs. Kari spent about fifteen minutes petting and playing with the dog and observed that he was
"really friendly." 

 A couple weeks later, Spence called Kari at work and told her that she was going to
have to euthanize the dog if Kari or someone else did not adopt him. Kari left work and went to the
shelter. There, she told Spence that she would like to take the dog but that she did not have the
money for the adoption fee. Spence said that she would waive the fee. Kari told Spence that she had
two other dogs and four young children at home. Spence reiterated that she knew the dog was good
with kids but that she was unsure of how it behaved with other dogs. Spence told Kari to take the
dog home and introduce him to her other dogs. She said that if the dogs got along well, Kari should
keep the new dog, but if they did not get along, she should return him to the shelter. 

 Kari signed adoption papers and took the dog home. She introduced him to her other
dogs and let them spend time together. She stayed home for four or five hours and observed the
dogs, who played together and seemed to get along well. At about 5:30 pm, she left to pick up her
children from day care. Before she left, she put the new dog on a chain and tied him to a tree. 
Shortly after she returned with her children, a family friend, Dennis Wade, arrived to wait for
Kari's husband to get home from work. While Wade waited, he and Kari sat down at a picnic table
and talked. Kari kept her youngest child with her, but her three other children scattered in different
directions. Meanwhile, the new dog was still tied to a tree about fifteen feet behind Kari. Then, less
than thirty minutes after Kari and Wade sat down, they heard growling and screaming from the
direction of the dog. Kari turned around to see the dog attacking her four-year-old son, J.W.R., who
she had just recently seen sitting on the ground playing with a truck. She ran to her son, pushed the
dog off of him, and laid on top of him to protect him. Wade was just behind Kari and either hit the
dog to get it away or grabbed the dog by the collar, keeping it from going back toward Kari and
J.W.R. J.W.R. had blood on his face and was crying. Kari carried J.W.R. inside the house, where
she used a towel to try to stop the bleeding. Meanwhile, John William Reagan, Kari's husband and
J.W.R.'s father, arrived home and discovered what happened. Within minutes of his arrival, he shot
the dog in the head, killing it. He and Kari then took J.W.R. to a hospital in Taylor, where hospital
staff cleaned J.W.R.'s wounds and stopped the bleeding. Kari and Reagan were then told to take
J.W.R. to another hospital to get his wounds stitched, which they did. 

 In August 2005, Reagan filed suit, individually and on behalf of J.W.R., against the
City of Elgin, alleging that the City was negligent and grossly negligent in failing to destroy the dog
and in allowing Kari to adopt it. Reagan later filed a motion to nonsuit his individual claims, which
the trial court granted. In April 2006, the City filed a joint motion for summary judgment and plea
to the jurisdiction, which was denied by the trial court. This appeal followed. (1) 


STANDARD OF REVIEW

 In Texas, sovereign immunity deprives a trial court of subject-matter jurisdiction for
lawsuits in which the state or certain governmental units have been sued unless the state consents
to suit. Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004). Thus, a
governmental unit properly raises the issue by a plea to the jurisdiction. See id. at 225-26. We
review de novo the trial court's ruling on a plea to the jurisdiction. Id. at 226. In reviewing a ruling
on a plea to the jurisdiction, we do not weigh the merits of the claim but consider only the plaintiff's
pleadings, construed in the plaintiff's favor, and the evidence pertinent to the jurisdictional inquiry. 
County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002). 

 When a plea to the jurisdiction challenges the pleadings, we determine if the pleader
has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. Miranda,
133 S.W.3d at 226. If a plaintiff fails to plead facts sufficient to establish jurisdiction, but the
petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of
pleading sufficiency, and the plaintiff should be afforded an opportunity to amend. Id. at 226-27. 
If the pleadings affirmatively negate the existence of jurisdiction, a plea to the jurisdiction may be
granted without allowing the plaintiff an opportunity to amend. Id. at 227. 

 If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider
relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised,
as the trial court is required to do. Id. If the evidence creates a fact question regarding the
jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will
be resolved by the fact-finder. Id. at 227-28. However, if the relevant evidence is undisputed or fails
to raise a fact question on the jurisdictional issue, the trial court should rule on the plea to the
jurisdiction as a matter of law. Id. at 228. 


DISCUSSION 

Governmental or Proprietary Function

 Cities retain immunity from suit for torts committed in the performance of their
governmental functions unless the legislature has expressly, by clear and unambiguous language,
waived that immunity. See City of LaPorte v. Barfield, 898 S.W.2d 288, 291 (Tex. 1995). 
Governmental functions are acts involving purely governmental matters solely for the public benefit. 
Tooke v. City of Mexia, 197 S.W.3d 325, 343 (Tex. 2006). In contrast, cities are not immune from
suit for torts committed in the performance of their proprietary functions. Id. Proprietary functions
are those the city conducts in its private capacity for the benefit only of those within its
corporate limits, and not as an arm of the government. Id. The legislature specifically designates
several actions as governmental functions. See Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)
(West 2007). 

 The City contends that allowing members of the public to adopt animals from its
shelter is a governmental function because the activity is a component of animal control, which is
one of the activities expressly designated as a governmental function by the legislature. See
id. § 101.0215(a)(33). Courts have repeatedly recognized that activities that are closely related to
or necessary for the performance of governmental functions are also governmental functions. 
See City of Houston v. Petroleum Traders Corp., 261 S.W.3d 350, 357 (Tex. App.--Houston
[14th Dist.] 2008, no pet.) (purchase of fuel by city was governmental function because fuel was
necessary to perform designated governmental functions, such as police and fire protection); City
of San Antonio v. Butler, 131 S.W.3d 170, 177-78 (Tex. App.--San Antonio 2004, pet. denied)
(even though it produced profit for city, city's sale of alcohol at concert was governmental function
because it was associated with designated governmental function of operating civic centers,
convention centers, or coliseums). Here, an animal-control ordinance in place at the time Kari
adopted the dog stated that any animal "not claimed by its owner within the time period designated
in this section shall become the property of the city," and that the City "may then either sell the
animal or humanely dispose of it." See Elgin, Tex., Ordinance 93-26 (Aug. 18, 1993). We conclude
that allowing the adoption of animals from the City's shelter is an activity so closely related to
animal control that it is a governmental function. (2) See Petroleum Traders, 261 S.W.3d at 357;
Butler, 131 S.W.3d at 177-78. 


Waiver of Immunity 

 We now turn to an analysis of Reagan's pleadings and pertinent jurisdictional
evidence to determine whether the facts alleged establish a waiver of sovereign immunity under the
TTCA. In his petition, Reagan alleges that the City waived immunity under section 101.021(2) of
the Texas Civil Practice and Remedies Code, which states that a governmental unit is liable for
"personal injury and death so caused by a condition or use of tangible personal or real property if the
governmental unit would, were it a private person, be liable to the claimant according to Texas law." 
See Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). Thus, Reagan must first allege facts that show
a "use" by the City that resulted in personal injury to J.W.R. The term "use" in this context is
defined as "to put or bring into action or service; to employ for or apply to a given purpose." See
San Antonio State Hosp. v. Cowan, 128 S.W.3d 244, 246 (Tex. 2004). Reagan asserts that the City
"used" the adoption process, and thus "used" the dog itself, in order to avoid putting the dog to
death. The City counters that the use of a process cannot be considered the use of "tangible personal
or real property." We agree with the City. Reagan does not cite to, and we have not found, any legal
authority to support the proposition that use of a process constitutes use of property under the TTCA. 
Even if we assume that the adoption process constituted a "use" of the dog itself, the use must have
actually caused the injury. See Texas Dep't of Criminal Justice v. Miller, 51 S.W.3d 583, 588
(Tex. 2001). Here, the adoption of the dog occurred hours before the dog attacked J.W.R. Thus, the
most that could be alleged is that the dog's adoption furnished the condition that made the injury
possible, which has been deemed insufficient to constitute a "use" under the statute. See id. (no
waiver where use of medical treatment suppressed symptoms of meningitis and patient later died);
Dallas County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 343 (Tex. 1998)
(no waiver where patient escaped through unlocked hospital doors and later committed suicide). We
therefore reject Reagan's first argument. 

 In a second argument, Reagan contends that this case is similar to those holding that
the provision of tangible property lacking an "integral safety component" constitutes a waiver of
immunity. See Robinson v. Central Tex. MHMR Ctr., 780 S.W.2d 169, 171 (Tex. 1989)
(no immunity for mental health facility that provided swimming attire to epileptic patient but did not
provide life preserver); Lowe v. Texas Tech Univ., 540 S.W.2d 297, 300 (Tex. 1976) (no immunity
for university that provided uniform and equipment to football player but failed to provide knee
brace). Reagan asserts that the dog's lack of an appropriate disposition to be a family dog is
equivalent to a lack of an integral safety component such as a life preserver or knee brace. However,
nothing in Lowe or Robinson suggests that an intangible concept such as a dog's temperament would
fall within the supreme court's limited holdings, and Reagan does not cite to any other legal authority
in support of his position. Further, the supreme court has specifically stated that cases such as Lowe
and Robinson represent "the outer bounds" of what the court has defined as "use" of tangible
personal property. See Texas A&M Univ. v. Bishop, 156 S.W.3d 580, 584 (Tex. 2005) (citing
Kerrville State Hosp. v. Clark, 923 S.W.2d 582, 585 (Tex. 1996)). Thus, we decline to extend the
principle of Lowe and Robinson to this case. 

 In a third argument, Reagan cites San Antonio State Hospital v. Cowan and contends
that the City waived immunity because it provided Kari with a dog that was inherently unsafe. 
128 S.W.3d at 245. In Cowan, the supreme court held that merely providing someone with personal
property that is not itself inherently unsafe was not a "use" within the meaning of the TTCA. Id. 
Reagan argues that the implication of the holding is its opposite: that providing someone with
personal property that is inherently unsafe is a "use" within the TTCA. We disagree that Cowan
implies such a proposition, and Reagan does not cite to any other legal authority as support. The
supreme court stated in Cowan that "a governmental unit does not 'use' personal property merely
by allowing someone else to use it and nothing more." Id. at 246. The governmental unit must itself
be the user. Id. at 245-46. The only circumstance in which a governmental unit has been found to
have "used" property merely by providing it is when the property provided lacks an integral
safety component, and we have already found that exception inapplicable to this case. We therefore
reject this argument. 

 In a fourth argument, Reagan alleges that the City has waived sovereign immunity
because it would be strictly liable for J.W.R.'s injuries if it were a private person based on its
decision to allow the adoption of a "vicious" dog with "dangerous propensities abnormal to its
class." See Marshall v. Ranne, 511 S.W.2d 255, 258 (Tex. 1974) (stating that suits for damages
caused by vicious animals are governed by principles of strict liability); Restatement (Second) of
Torts § 509 (1977) (stating that strict liability applies when animal harms someone and possessor
of animal knew or had reason to know that animal had dangerous propensities abnormal to its class). 
In arguing that the City knew of the dog's alleged dangerous propensities, Reagan references an
article regarding this case from a local Elgin newspaper, in which a reporter stated that "Spence
reported she told the family repeatedly that the animal was aggressive toward other animals." 
However, even if the City could be held strictly liable as a private person based on Spence's alleged
knowledge of the dog's dangerous propensities, Reagan must still establish that the City waived
immunity by "using" property. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). We have
already determined that Reagan has not done so here. Further, at least two of our sister courts
have held that the TTCA does not waive sovereign immunity for strict-liability claims. (3) See
EPGT Tex. Pipeline, L.P. v. Harris County Flood Control Dist., 176 S.W.3d 330, 339
(Tex. App.--Houston [1st Dist.] 2004, pet. dism'd); University of N. Tex. v. Harvey, 124 S.W.3d
216, 224 (Tex. App.--Fort Worth 2003, pet. denied). Because Reagan has not established that the
City waived immunity, we reject his strict-liability argument. 

 In a final argument, Reagan contends that the City's failure to euthanize the dog and
its decision to allow the adoption of the dog were ministerial functions, for which a governmental
entity is not immune. In support of his assertion, Reagan cites section 101.056 of the Texas Civil
Practice and Remedies Code (4) and quotes from University of Texas at San Antonio v. Trevino,
153 S.W.3d 58, 61 (Tex. App.--San Antonio 2002, no pet.), in which the court stated that "[i]f the
injury results from the formulation of policy, the governmental entity is immune . . . [but] [i]f the
injury results from the negligent implementation of policy, the governmental entity is not immune." 
However, the Trevino court specifically stated that section 101.056 is an exception to the waiver of
immunity and that its purpose is "to avoid judicial review of governmental policy decisions." 
153 S.W.3d at 61. In other words, even if a plaintiff establishes a waiver of immunity under the
TTCA, the governmental entity still maintains immunity under section 101.056 unless the entity's
action was ministerial. Id. As a result, we reach an analysis under section 101.056 only after a
plaintiff has established a waiver of immunity, which we have already concluded Reagan did not do
here. Thus, because Reagan has not established that the City waived its sovereign immunity, we
need not decide whether the City's activity was discretionary or ministerial. 


Opportunity to Amend

 Reagan also requests that we allow him an opportunity to amend his petition to assert
a claim for breach of contract. Reagan cites City of Texarkana v. City of New Boston, 141 S.W.3d
778 (Tex. App.--Texarkana 2004, no pet.), in arguing that a municipality does not enjoy sovereign
immunity for contract claims. In City of Texarkana, the court held that language in the Texas Local
Government Code stating that a municipality "may plead and be impleaded" in any court constituted
a waiver of immunity from suit. Id. at 789. However, City of Texarkana was subsequently
overturned in Tooke, which held that the "plead and be impleaded" language in the code does not
by itself waive immunity. Tooke, 197 S.W.3d at 342-43. Thus, even if we granted Reagan's
request to add a breach of contract claim to his petition, the petition still would not be sufficient. 
See Texas A&M Univ. Sys. v. Koseoglu, 233 S.W.3d 835, 840 (Tex. 2007) (stating that merely
pleading more facts in support of breach of contract claim will not overcome governmental entity's
immunity from suit). Reagan would still need to show a waiver of immunity, which he has not done
and cannot do given the facts of this case. Accordingly, we overrule Reagan's request. 


CONCLUSION

 Because the pleadings and jurisdictional evidence demonstrate that Reagan's suit
incurably falls outside any waiver of sovereign immunity, we reverse the trial court's order and
render judgment dismissing Reagan's suit for want of jurisdiction. 


 ___________________________________________

 David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Reversed and Rendered

Filed: February 26, 2009
1. In October 2006, Reagan filed an amended petition, adding an allegation that the City was
strictly liable for J.W.R.'s injuries because the dog was "unreasonably dangerous." Although the
amended petition was filed after the appeal, we treat the amended petition as the active pleading
because both parties do so in their briefs. 
2. Reagan also argues that the act of allowing the adoption of animals from the City's shelter
is a proprietary function because "the adopting out of a vicious dog is an ultrahazardous activity." 
See Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(b)(3) (West 2007) (characterizing as proprietary
function "any activity that is abnormally dangerous or ultrahazardous"). However, in considering
whether the City's activity here was proprietary, we need not make a factual determination of
whether the dog in this case was "vicious," and we decline to characterize the City's activity as
allowing the adoption of "vicious" dogs. Further, Reagan does not cite to, and we have not found,
any legal authority in support of his contention that allowing the adoption of animals is an
ultrahazardous activity. We therefore maintain our conclusion that the City's activity is a
governmental function for which the City retains immunity from suit absent an express waiver
of immunity. 
3. One Texas case, City of Dallas v. Heard, 252 S.W.3d 98, 112 (Tex. App.--Dallas 2008,
pet. denied), found a waiver of immunity based on a theory of strict liability where a gorilla at the
Dallas Zoo escaped from its enclosure and attacked zoo visitors. The court held that the city waived
immunity under section 101.021(2) of the Texas Civil Practice & Remedies Code because the city
"used" the gorilla as an attraction to generate revenue and because the city would be strictly liable
as a private person based on its possession of a wild animal. Id. at 110, 112. Heard is
distinguishable from this case for two reasons: (1) unlike the court in Heard, we have determined
that Reagan did not allege a "use" of property; and (2) the Heard court based its decision in part on
the fact that the gorilla was a wild animal, a factor not present in this case. See id. at 112; see also
Marshall v. Ranne, 511 S.W.2d 255, 258 (Tex. 1974); Restatement (Second) of Torts § 507 (1977)
(stating that possessor of wild animal is subject to liability for harm done by animal to another, even
if possessor exercised utmost care to confine animal or otherwise prevent it from doing harm). 
4. Section 101.056 is titled "Discretionary Powers" and states the following:


 This chapter does not apply to a claim based on:


 (1) the failure of a governmental unit to perform an act that the unit
is not required by law to perform; or

 (2) a governmental unit's decision not to perform an act or on its
failure to make a decision on the performance or nonperformance of
an act if the law leaves the performance or nonperformance of the act
to the discretion of the governmental unit. 


 Tex. Civ. Prac. & Rem. Code Ann. § 101.056 (West 2007).